IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Souther:: District of Texas
FILED

JUN 3 0 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Subscribing to Policy No.UP00US360002, Plaintiffs, | § § § § § |
| V. | § § § |
| VALLEY GRANDE MANOR, INC., D/B/A VALLEY GRANDE MANOR, Defendant | § § § § |

C.A. No. B-03-081

## PLAINTIFFS' MOTION FOR FINAL SUMMARY JUDGMENT

COME NOW, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Subscribing to Policy No. UP00US360002 ("Plaintiffs"), and ask the Court to render final summary judgment against Defendant, as authorized by Federal Rule of Civil Procedure 56.

### A. INTRODUCTION

1.    Plaintiffs are Certain Underwriters at Lloyds, Subscribing to Policy No. UP00US360002; Defendant is Valley Grande Manor, Inc., d/b/a Valley Grande Manor.

2.    On February 12, 2003, Plaintiffs sued Defendant for breach of contract. Specifically, and pursuant to the insurance policy entered into between Plaintiffs and Defendant, Defendant agreed and became obligated to pay Plaintiffs a deductible for any claim it made under the subject policy. Defendant made such a covered claim under the policy, but has failed to remit payment for the required deductible, of which Plaintiffs now complain.

3.     On March 19, 2003, Defendant filed a Motion to Dismiss or, in the Alternative, to Transfer Venue, and an Original Answer. This case was eventually transferred to this court from the Houston Division of the Southern District of Texas, pursuant to an agreement between the parties.

4.     Plaintiffs now file this Motion for Final Summary Judgment on their cause of action for breach of contract. Summary judgment should be granted in this cause because the summary judgment evidence establishes all elements of Plaintiffs' cause of action as a matter of law. Summary judgment is proper in this case because there is no genuine issue as to any material fact and because Plaintiffs are entitled to judgment as a matter of law. Specifically, Plaintiffs would show that, per the insurance policy entered into between Plaintiffs and Defendant, Defendant was obligated and became bound to pay a deductible to Plaintiffs in the event of a covered loss under the policy. Defendant sustained a covered loss for which Plaintiff provided defense and indemnity, but Defendant has failed to make payment for the deductible amount. As such, Defendant is in breach of contract.

## B. **STATEMENT OF UNDISPUTED FACTS**

5.     On or about June 10, 2000, Plaintiffs contracted with Defendant to provide Defendant general and professional liability insurance coverage under Policy No. UP00US360002 ("The Policy," attached hereto as Exhibit "A"). Defendant operates as a nursing and convalescence home.

> **SECTION IV** - Conditions of the Policy contract prescribes as follows:
>
> 14.    Payment of deductible
>
> > As a condition precedent to coverage under Insuring Agreements (A), (B) and (C), the Insured must pay "Damages" and "Claim Expenses" within the deductible upon demand from us.

6.      The deductible was $50,000.00 as prescribed in the Policy declarations.

**SECTION V - DEFINITIONS** contained material definitions as follows:

6.      "Claim Expenses" means all reasonable and necessary fees, costs and expenses incurred in connection with the investigation, adjustment, defense, and appeal of a "Claim."

8.      "Damages" means compensation, in money, which the Insured shall be obligated to pay by reason of judgment or settlement for liability to which this insurance applies. . .

7.      On or about January 21, 2002, Defendant (among others) was sued for negligence by Martha Flores on behalf of the Estate of Jose De Jesus Morales ("the Morales suit," Cause No. 2001-10-4491-D, In the 103rd Judicial District Court of Cameron County, Texas), alleging that Defendant was negligent in its treatment and care of Mr. Morales during his intermittent admissions at Valley Grande Manor between April 25, 1999, and May 1, 2001.  The Morales suit eventually settled prior to trial, with Defendant required to fund a portion of the settlement.  See Affidavit of J. Brian Hobbs, attached hereto as Exhibit "B."  In the process of defending the Morales suit, Defendant additionally incurred and Plaintiff paid for significant attorneys' fees and expenses.  See Exhibit "B".

8.      Pursuant to the above referenced Policy contract language, Plaintiffs made written demand upon Defendant to pay the outstanding attorney's fees and expenses.  Such demand was made on September 4, 2002, September 18, 2002, and November 8, 2002.  See Exhibit "C." Additionally, pursuant to the above referenced Policy contract language, Plaintiffs made written demand upon Defendant to pay $25,000.00, which was a portion of the total settlement of the Morales suit in the amount of $130,000.00.  Such demand was made on September 4, 2002, September 18, 2002, November 8, 2002, and December 3, 2002.  See Exhibit "C." Defendant was obligated to pay its $50,000.00 deductible toward the settlement of the Morales suit, together with

fees and expenses, as "damages" and "claim expenses" upon demand by Plaintiffs. All of such

written demands were ignored by Defendant, which is a breach of the Policy contract.

## C. STANDARD OF REVIEW

9.      Summary judgment is proper in any case whether there is no genuine issue of material

fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

A plaintiff moving for summary judgment satisfies its burden by submitting summary judgment

proof that establishes all elements of its cause of action as a matter of law. See *San Pedro v. U.S.*,

79 F.3d 1065, 1068 (11th Cir. 1996). Plaintiff must show that no reasonable trier of fact could find

other than for plaintiff. *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986).

## D. ARGUMENT AND AUTHORITIES

10.      Plaintiffs are entitled to summary judgment because they can prove each element of

their cause of action for breach of contract as a matter of law. To carry their burden, Plaintiffs must

prove: (1) that Plaintiffs and Defendant had a valid, enforceable contract; (2) that Plaintiffs

performed, tendered performance, or were excused from performing its contractual obligations; (3)

that Defendant breached the contract; and (4) that Defendant's breach caused Plaintiffs injury.

*Southwell v. University of the Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App. – San Antonio

1998, pet. denied).

It is a fundamental rule of law that insurance policies are contracts and, as such, are

controlled by rules of construction which are applicable to contracts generally. *Barnett v. Aetna Life

Insurance Company*, 723 S.W.2d 663 (Tex.1987). As such, insurance policies are enforced as

written, barring any ambiguities that exist with respect to the policy language at issue. *Id.* No such

ambiguity exits in the case at bar. To the contrary, the policy at issue clearly states in no uncertain

terms that it is a condition precedent to coverage that Defendant pay "damages and claim expenses within a deductible amount demanded from [Plaintiffs]". See Exhibit "A." Further, both "claim expenses" and "damages" are clearly defined within the policy. *Id.* Plaintiffs satisfied their duties under the contract by funding the loss settlement in the Morales suit, and by paying for all defense costs associated with defending the Morales suit. See Exhibit "B." Defendant, however, has yet to meet its obligation under the policy and remit payment for the deductible amount, as clearly required by the policy. See Exhibit "B". As such, Defendant is in breach of contract and Plaintiffs are entitled to judgment as a matter of law.

### E. SUMMARY JUDGMENT EVIDENCE

11.    In support of their motion, Plaintiffs include evidence in the attached appendix. The Motion for Summary Judgment is based on the following proof included in the appendix:

a.    The subject insurance policy entered into between Plaintiffs and Defendant, attached hereto as Exhibit "A";

b.    The Affidavit of J. Brian Hobbs, program director at Professional Claims Managers, Inc., attached hereto as Exhibit "B";

c.    Copies of correspondence sent to Defendant demanding payment, attached hereto as Exhibit "C"; and

d.    The Affidavit of Michael W. McCoy, the attorney of record for Plaintiffs, attached hereto as Exhibit "D."

### F. **ATTORNEY FEES**

12.    Plaintiffs are entitled to attorney fees incurred in prosecuting this suit.  The affidavit of Michael W. McCoy, included in the appendix, establishes that Plaintiffs are entitled to attorney fees in the amount of $12,000.00, as a matter of law.

### G. **CONCLUSION**

WHEREFORE, Plaintiffs are entitled to summary judgment as a matter of law because Plaintiffs have performed their obligations under the subject insurance policy by not only funding the covered loss (the Morales suit), but by also funding all defense costs associated with same. Defendant, however, has failed to honor its obligations under the policy by failing, as a condition precedent, to remit payment to Plaintiffs for the deductible amount as prescribed under Section IV of the subject policy.  As such, there is no genuine issue of material fact, and Plaintiffs ask the Court to grant their motion and render a final summary judgment against Defendant.

Respectfully submitted,

By _____
Michael W. McCoy
State Bar No. 13471850
Federal I.D. No. 3801
Four Houston Center
1331 Lamar, Suite 1560
Houston, Texas 77010-3028
Phone:  (713) 654-1560
Fax:     (713) 654-7930

ATTORNEYS FOR PLAINTIFFS CERTAIN
UNDERWRITERS AT LLOYDS, LONDON

OF COUNSEL:

**FOWLER, RODRIGUEZ & CHALOS**
Geoffrey C. Sansom
State Bar No. 24033159
Federal I.D. No. 30287
Four Houston Center
1331 Lamar, Suite 1560
Houston, Texas 77010-3028
Phone:  (713) 654-1560
Fax:     (713) 654-7930

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this 30th day of June, 2003.

**Via Fax and CM/RRR**
C. Frank Wood
Sanchez, Whittington, Janis & Zabarte
100 North Expressway 83
Brownsville, Texas  78521-2284

Michael W. McCoy

## CANCELLATION ENDORSEMENT

In consideration of the return premium of $85,055.00 this policy is hereby cancelled effective September 15, 2000.

| | |
|---|---|
| $85,055.00 | Return Premium |
| $ 4,125.17 | Return Surplus Lines Tax |
| $   212.64 | Return Stamping Office Fee |
| $89,392.81 | Total Return |

Attached to and forming part of No. UP00US360002 of Underwriters hereon.

Effective:     September 15, 2000

Insured:  Valley Grande Manor

HC 206
Ed 0600

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

By ~~RANDALL E. GOSS  CHAIRMAN/CEO~~  **61**
(Authorized Representative)

EXHIBIT

A

102. N. Central Expressway Suite
Dallas, Texas 75231

In consideration of the stipulations and premium shown, Underwriters do hereby bind themselves, each for his own part and not one for the other as follows: IN FAVOR OF THE INSURED whose name and address is shown, for the limits or amount specified hereon, and for the term stipulated, according to the following:

| This Declaration Page is attached to and forms part of certificate provisions | (Form SLC-3 USA). |
|---|---|

| Previous No. | Authority Ref. No.  UP00US 36 | Certificate No.  UP00US360002 |
|---|---|---|

Name and Address of Insured:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX 78520

Effective from   June 10, 2000                     to        June 10, 2001
both days at 12:01 a.m. local standard time

Insurance is effective with certain Underwriters at Lloyd's, London  (See Security)        Percentage      –      100%

| Amount | Coverage | Annual Premium |
|---|---|---|
| See Coverage Part Declarations | Professional, General Liability<br>Employee Benefit Liability | $135,000.00<br>$  2,500.00   Inspection Fee<br>$  6,668.75   State Tax<br>$     343.75   Stamping Fee<br>$144,512.50   Total |

Bed Rate: $750.00

Operations:  Nursing Facility

Special Conditions:
The following forms apply to this Certificate: FORMS ATTACHED –

HC 001; HC SYN; HC 200; HC 201; HC 202; HC 203; HC401

Service of  Suit may be made upon:
          Mssrs. Mendes and Mount
          750 Seventh Avenue
          New York, NY 10019-6829

Issued at:         Dallas, Texas
                        daj

Date:  December 6, 2000

It is expressly understood and agreed by the Insured by accepting this instrument that U. S. Risk,. Inc. is not an Insurer hereunder and shall not be liable in any way nor to any extent whatsoever for any loss or claim.

U. S. RISK UNDERWRITERS, INC.

Servicing Agent:                                                          61

Craven/Warren & Co.                          BY: RANDALL G. GOSS, CHAIRMAN/CEO
P.O. Box 41328                                         Correspondent
Houston, TX 77241-1328

OVERAGE PART DECLARATIONS

Certificate No. UP00US360002

In consideration of and in accordance with the policy wording HC 001, the Declaration Page Form SLC-3 USA is completed as follows:

Item 3:  Limits of Insurance:

A.  Each Occurrence Limit (Insuring Agreements A and B):          $1,000,000

B.  Each Claim Limit (Insuring Agreement C):          $ EXCLUDED

C.   General Aggregate Limit (Other than Products-
            Completed Operations):          $2,000,000

D.  Products-Completed Operations Aggregate Limit:          $ INCLUDED IN GENERAL AGGREGATE

E.  Employee Benefits Liability Aggregate Limit:          $ EXCLUDED

F.  Fire Damage Limit:          $50,000

Item 4:
Deductibles:          Insuring Agreements A and B:          $50,000
            Insuring Agreement C          $ NOT APPLICABLE

Item 6:
Retroactive Date: NOT APPLICABLE

Item 7: Underwriters Representative:

U. S. Risk Underwriters, Inc.
10210 N. Central Expressway, Suite 500
Dallas, TX  75231

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE "INSURED"
AND THE POLICY PERIOD.

Certificate No: UP00US360002

This insurance contract includes this Schedule, the application presented by the "Insured", declarations and certificate, and all other endorsements, provisions, terms and conditions attached hereto and made a part hereof:

Underwriters at Lloyd's, London

| Underwriter Name | | | Participation |
|---|---|---|---|
| Syndicate | #1900 | NEW | 14.03% |
| | #2488 | AGM | 14.03% |
| | #376 | AGY | 10.53% |
| | #1047 | RGW | 10.53% |
| | #205 | HGJ | 10.53% |
| | #2027 | COX | 10.53% |
| | #1688 | HIH | 7.02% |
| | #861 | MDR | 3.16% |
| | #1209 | MEB | 3.86% |
| | #1411 | SUT | 5.26% |
| | #991 | AEG | 3.50% |
| | #1212 | SJ | 7.02% |

For and on behalf of Underwriters
U.S. Risk Underwriters, Inc.

By _____    61
RANDALL G. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC SYN
Ed 0600

# IMPORTANT NOTICE

# AVISO IMPORTANTE

1  To obtain information or make a
   complaint:

2  You may contact the Texas Department
   of Insurance to obtain information
   on companies, coverages, rights or
   complaints at:

   1-800-252-3439

3  You may write the Texas
   Department of Insurance:

   P.O. Box 149104
   Austin, TX  78714-9104
   FAX #(512)475-1771

4  PREMIUM OR
   CLAIM DISPUTES:

   Should you have a dispute
   concerning your premium or
   about a claim you should contact
   the agent first.  If the dispute is
   not resolved, you may contact the
   Texas Department of Insurance.

5  ATTACH THIS NOTICE
   TO YOUR POLICY:

   This notice is for information
   only and does not become a
   part of condition of the attached
   document.

Para obtener informacion o para
someter una queja:

Puede comunicarse con el
Departamento de Suguros de Texas
para obtener informacion acerca de
companieas, coberturas, derechos o
que jasal:

   1-800-252-3439

Puede escribir al Departmento de
Seguros de Texas:

P.O. Box 149104
Austin, TX  78714-9104
FAX #(512)475-1771

DISPUTAS SOBRE PRIMAS
O RECLAMOS:

Si tiene una disputa concerniente a
su prima o reclamo, debe
comunicarse con el agente primero.
Si no se resuelve la disputa, puede
entonces comunicarse con el
departamento (TDI).

UNA ESTE AVISO A
SU POLIZA:

Este aviso es solo para proposito
de informacion y no se convierte
en parte o condicion del documento
adjunto.

GUARANTY FUND NONPARTICIPATION NOTICE

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A SURPLUS LINES COVERAGE PURSUANT TO THE TEXAS INSURANCE STATUTES. THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE AND THIS INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER ARTICLE 21.28-C., INSURANCE CODE.  ARTICLE 1.14-2 INSURANCE CODE, REQUIRES PAYMENT OF 4.85 PERCENT TAX ON GROSS PREMIUM.

## SPECIFIED LOCATION ENDORSEMENT

It is agreed the insurance provided by this policy does not apply to any "Claim" for liability arising out of any operations of the "Insured" other than those operations as specified, described and located below:

Healthcare Facility:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX 78520

It is further understood and agreed that if the "Insured" purchases, organizes or otherwise acquires any healthcare facilities, other than as shown above, the "Insured" must, within 30 days furnish full information including a completed, signed and dated application to "Underwriters". "Underwriters" will determine the acceptability of the newly purchased, organized or acquired facility(s) and whether or not to add such location for coverage hereunder. If acceptable to "Underwriters", a premium charge will be determined and will be due and payable within 30 days thereafter.

HC 200
Ed. 0600          1

Neither Insuring Agreements (A); (B); nor (C) will apply to occurrences or wrongful acts which occurred prior to the purchase, organization or acquisition of the new healthcare facility(s). All other terms and conditions of this policy would apply unless endorsed otherwise.

Attached to and forming part of No. UP00US360002 of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U.S. Risk Underwriters, Inc.

61

RANDALL C. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC 200
Ed. 0600                     2

## SERVICE OF SUIT CLAUSE (U.S.A.)

... Underwriters hereon to pay any amount claimed to be due hereunder, the ... (or Reinsured), will submit to the jurisdiction of a Court of competent ... Nothing in this Clause constitutes or should be understood to constitute a waiver of ... Court of competent jurisdiction in the United States, to remove an action to a ... of a case to another Court as permitted by the laws of the United States or of ... that service of process in such suit may be made upon

**MENDES & MOUNT**
**750 SEVENTH AVENUE**
**NEW YORK, NY   10019-6829**

... upon this contract, Underwriters will abide by the final decision of such ...

... accept service of process on behalf of Underwriters in any such suit and/or ... a written undertaking to the Insured (or Reinsured) that they will enter a ... vent such a suit shall be instituted.

... tory or district of the United States which makes provision therefor, Underwriters ... the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose ... cessors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary ... out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Attached to and forming part of No. UP00US363102      **Underwriters hereon.**

Effective January 1, 2003

Insured: Villa Ponte a la Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

By _____  **61**
RANDALL G. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC 201
Ed 04/03

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-PHYSICAL DAMAGE-DIRECT N.M.A.1191**

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*Note - If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BOARD) N.M.A.1256**

<u>This Policy*</u>                                                                                         does not apply:

I.      Under any liability Coverage, to injury, sickness, disease, death or destruction

        (a)      with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b)      resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

        (a)      the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

        (b)      the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (c)      the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.     As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material, (1) containing byproduct material and (2) resulting from the

operation by any person or orga    tion of any nuclear facility included withi.,    definition of nuclear facility under paragraph (a) or (b) thereof; **"nuclear facility"** means

    (a)    any nuclear reactor,

    (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

Other items and conditions remaining unchanged.

Attached to and forming part of Policy No. UP00US360002        of Underwriters hereon.

Effective: June 10, 2000

Insured:Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

61

RANDALL A. GOSS- CHAIRMAN/CEO (Authorized Representative)

HC 202
Ed 0600                                Page 2 of 2

## MINIMUM EARNED PREMIUM ENDORSEMENT

The minimum earned premium for this policy, regardless of term, will be 25% of the annual deposit premium, plus any applicable fees which are fully earned.

Attached to and forming part of No.  UP00US360002        of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

HC 203
Ed 0600

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

_____ 61
RANDALL G. GOSS, CHAIRMAN/CEO
(Authorized Representative)

## AMENDATORY ENDORSEMENT

t is understood and agreed that SECTION I – COVERAGES (C) Employee Benefit Liability Insurance,  Page 1 of
0 of the policy Conditions is deleted.

Attached to and forming part of No. UP00US360002  of Underwriters hereon.

Effective:  June 10, 2000

Insured:  Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

61

By RANDALL G. GOSS  CHAIRMAN/CEO
(Authorized Representative)

HC 401
Ed 0600

b.   **Excess Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.   When this insurance is excess over other insurance, we will have no duty under Insuring Agreements (A), (B) or (C) to defend the "Insured" against any "Claim" if any other insurer has the duty to defend the "Insured" against that "Claim."   If no other insurer defends, we may undertake to do so, at our discretion, but we will be entitled to the "Insured's" right against all those other insurers.

When this insurance is excess over any other insurance, we will pay, up to the applicable limits of this insurance, the amount of the "Claim" that exceeds the sum of the total amount that all such other insurance would pay for the "Claim" in the absence of this insurance.
If other insurance is also excess, we will share the remaining amount of the "Claim" with that other insurance.

c.   **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "Claim" amount remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

4.   **When Your Business Changes**

The first Named "Insured" must notify us of any change which might affect the terms of this insurance.

5.   **Transfer Of Rights Of Recovery Against Others To Us**

If the "Insured" has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair them. At our request, the "Insured" will bring suit or transfer those rights to us and help us enforce them.

6.   **When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named "Insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

7.   **Cancellation**

1.   The first Named "Insured" shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this Policy by mailing or delivering to the first Named "Insured" written notice of cancellation at least:

    a.       10 days before the effective date of cancellation if we cancel for non-payment of premium; or

    b.       30 days before the effective date of cancellation if we cancel for any other reason.

3.       We will mail or deliver our notice to the first Named "Insured's" last mailing address known to us.

4.       Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.       If this Policy is canceled, we will send the first Named "Insured" any premium refund due. If we cancel, the refund will be pro rata. If the first Named "Insured" cancels, the refund will be calculated as per the attached Short Rate Cancellation Scale. The cancellation will be effective even if we have not made or offered a refund.

6.       If notice is mailed, proof of mailing will be sufficient proof of notice.

## 8.    Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named "Insured" shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

## 9.    Premiums

The first Named "Insured" shown in the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

## 10.    Inspection and Audit

We will compute all premiums for this coverage in accordance with our rules and rates.

"Underwriters" shall be permitted but not obligated to inspect the "Insured's" premises and operations as they relate to this policy, at any time during the "Policy Period" and up to five years afterward.

Any premium shown on this policy is an advance premium and may be a deposit premium only. "Underwriters" have the option, if they so chose, at the expiration of this policy period, to investigate and audit based on a per bed rate per the policy "Declarations" page. Additional premium will be calculated based on the rules and rates in effect at the inception date of this policy. Audit premiums are due and payable upon notice to the "Insured".

## 11.    Good Faith and Binding Arbitration

    a.      Good Faith Clause:

        Both you and we have the same duty to handle "Claims" and other matters under a covenant of good faith and fair dealing between each other. Reasonable settlements considering the probable liabilities and interests of both parties shall be made whether involving your deductible amount or self-insured retention, costs of defense, our limit of liability or any combination thereof.

    b.      Binding Arbitration Clause:

# Health Care Facilities

## Professional, General and Employee Benefit Liability Policy
### Occurrence Form

# Health Care Facilities
## Professional, General and Employee Benefit Liability Policy

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. COVERAGE UNDER INSURING AGREEMENT (C) EMPLOYEE BENEFIT LIABILITY IS PROVIDED ON A CLAIMS MADE BASIS. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

Throughout this Policy, the words "you" and "your" refer to the "Insured" shown in the Declarations, and any other person or organization qualifying as an "Insured" under **SECTION II - WHO IS AN INSURED** of this Policy. The words "we", "us" and "our" refer to the "Underwriters" providing this insurance. Other words and phrases that appear in quotation marks also have special meaning. Please refer to **SECTION V - DEFINITIONS.**

In consideration of the payment of the premium, in reliance upon the statements made and information provided in the Application, which is deemed attached hereto and incorporated in this Policy, and subject to all of the terms, conditions and limitations of this Policy and endorsements thereto, "Underwriters" agree with the "Insured" as follows:

## SECTION I - COVERAGES

1.    **Insuring Agreements**

   (A)    **Professional Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Occurrence" caused by a "Medical Incident;" provided that such "Medical Incident" first occurs in the "Coverage Territory" and during the "Policy Period."

   (B)    **Commercial General Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Bodily Injury" or "Property Damage" caused by an "Occurrence" or arising from "Personal Injury" or "Advertising Injury" caused by an offense; provided that the "Occurrence" or offense first takes place in the "Coverage Territory" and during the "Policy Period."

   (C)    **Employee Benefit Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Claim" made against the "Insured" by any "Employee," former "Employee," or "Employee's" beneficiaries or legal representatives for injury caused by a "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Programs"; provided that the "Wrongful Act" first takes place in the "Coverage Territory" and subsequent to the "Retroactive Date" specified in Item 6 of the Declarations; provided the "Claim" is first made against the "Insured during the "Policy Period" and is reported in writing to us during the "Policy Period."

**2.     Claim Expenses**

We will have the right and duty to defend the "Insured" against any "Claim" that is covered by Insuring Agreements (A), (B) or (C).  However, we will have no duty to defend the "Insured" against any "Claim" to which this insurance does not apply. We may, at our discretion, investigate and settle any "Occurrence" or "Claim." The total amount we will pay for "Damages" and "Claims Expenses" is limited, as described in **SECTION III - LIMITS OF INSURANCE.** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of "Damages" and/or "Claims Expenses."

**3.     Exclusions**

**(A)     Exclusions Applicable to Insuring Agreement (A):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (A) does not apply to any "Occurrence" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.     Any "Medical Incident" committed while the professional license or registration to operate the "Insured" facility was suspended, revoked, surrendered, or otherwise terminated.

2.     Any "Medical Incident" committed while the "Insured's" professional license to dispense controlled substances was suspended, revoked, surrendered, or otherwise terminated.

3.     Any "Property Damage."

4.     Any "Personal Injury" or "Advertising Injury," except to the extent that such "Injury" relates to a "Medical Incident."

5.     Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

6.     Services performed by a licensed medical professional, including, but not limited to a physician, surgeon, dentist, chiropractor, podiatrist, osteopath, nurse midwife or nurse anesthetist; but this exclusion shall not apply to services performed by an "Employee" of the "Insured," or services performed solely as a medical director.

7.     Disputes about your fees or charges, including collection of fees from third parties.

8.     Any act as a member of a formal accreditation or professional review or licensing board or any similar board or committee.

**(B)     Exclusions Applicable to Insuring Agreement (B):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (B) does not apply to any "Occurrence " or offense based upon, arising out of, directly or indirectly relating to or in any way involving:

1.     A "Medical Incident."

2.     Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

3.    "Property Damage" to:

    (1)    Property you own, rent or occupy;

    (2)    Premises you sell, give away or abandon, if the "Property Damage" arises out of any part of those premises;

    (3)    Property loaned to you;

    (4)    Personal property in the care, custody or control of the "Insured;"

    (5)    That particular part of the real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "Property Damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "Your Work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "Your Work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "Property Damage" included in the "Products-Completed Operations Hazard."

4.    "Property Damage" to "Your Product" arising out of it or any part of it.

5.    "Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

6.    "Property Damage" to "Impaired Property" or property that has not been physically injured arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

    (2)    A delay, or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

7.    Any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

HC 001 OC
Ed 0600

   (1)    "Your Product";

   (2)    "Your Work"; or

   (3)    "Impaired Property";

if such a product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

These exclusions do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

8.    "Personal Injury" or "Advertising Injury":

   (1)    Arising out of oral or written publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

   (2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the "Policy Period";

   (3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "Insured";

9.    "Advertising Injury" arising out of:

   (1)    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2)    The failure of goods, products, or services to conform with advertised quality or performance;

   (3)    The wrong description of the price of goods, products or services; or

   (4)    An offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

**(C)    Exclusions Applicable to Insuring Agreement (C):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (C) does not apply to any "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.    A "Medical Incident."

2.    "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury."

3.    Libel, slander, discrimination or humiliation.

4.   Any claim for failure of performance of contract by any "Insured", including failure or insolvency of any "Employee Benefit Program."

5.   Any claim based upon the "Insured's" failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, or any similar law.

6.   Any claim based upon the:

   a.   failure of stock to perform as represented by an "Insured";

   b.   advice given by an "Insured" to an "Employee" to participate or not to participate in stock subscription plans; or

   c.   investment or non-investment of funds or the income yield therefrom.

**(D)   Exclusions Applicable to ALL INSURING AGREEMENTS:**

This Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for any "Occurrence", offense or "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.   "Bodily Injury" to:

   (1)   An "Employee" of the "Insured" arising out of and in the course of:

      (a)   Employment by the "Insured"; or

      (b)   Performing duties related to the conduct of the "Insured's" business; or

   (2)   The spouse, child, parent, brother or sister of that "Employee" as a consequence of the events described in paragraph (1) above.

   This exclusion applies whether the "Insured" may be liable as an employer or in any other capacity and to any obligation to share "Damages" with or repay someone else who must pay "Damages" because of the "Injury."

   This exclusion does not apply to "Claims" under Insuring Agreement B involving liability assumed by the "Insured" under an "Insured Contract."

2.   Any "Event", offense or "Medical Incident" committed prior to the effective date of this Policy if:

   (a)   such "Claim" was the subject of a notice under any prior insurance policy or any prior or pending litigation; or

   (b)   at the effective date of this Policy you knew or could have reasonably foreseen that such "Event", offense or "Medical Incident" might reasonably be expected to be the basis of a "Claim."

3.  Any "Injury", "Bodily Ir  ,", "Property Damage", "Personal Injury"    "Advertising Injury" expected or intended from the standpoint of the "Insured;"

4.  The "Insured's" activities and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; provided that this Exclusion (D)(4) shall not apply to Insuring Agreement (C).

5.  The "Insured's" employment practices of any kind, including but not limited to, (a) refusal to employ; (b) termination of employment; (c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination; (d) consequential "Bodily Injury" or "Personal Injury" as a result of any such employment practice;

6.  Alleged or real acts of discrimination by any "Insured" based on age, health, sex, sexual preference, disability, race, country of origin or religion;

7.  Express warranties or guarantees made by any "Insured;"

8.  Any "Injury", "Bodily Injury" or "Property Damage" caused by any "Insured" while under the influence of intoxicants or narcotics;

9.  The real or alleged use or misuse of funds, grants or appropriations or for the return of such funds, grants or appropriations for any reason;

10. Any actual or alleged failure, malfunction or inadequacy of electronic data processing equipment or media. This exclusion does not apply to a "Claim" arising out of the dispensing of drugs, life monitoring or elopement.

11. "Bodily Injury," humiliation or emotional distress to any person arising out of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS);

12. "Bodily Injury" to any person arising out of exposure to lead.

13. Any "Bodily Injury" or "Property Damage" caused by or involving medical waste.  Medical waste means isolation wastes, infectious agents, human blood and blood products, pathological wastes, sharps, body parts, contaminated bedding, surgical wastes, contaminated laboratory wastes and dialysis wastes.

14. The existence of asbestos, or to any liability for any loss including, but not limited to, property damage, loss of use, loss of income, cost of inspection, cost of removal, cost of disposal, cost of repair or replacement, "Bodily Injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time arising out of the manufacture of, mining of, use of, sale of, installation of, distribution of, removal of, encapsulation of, presence of, or exposure to asbestos, or to any obligation on your part to indemnify any party because of "Damages" arising out of such loss, damage, or injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos.

15. A criminal act or fraud or dishonesty committed by any "Insured."

16.  Liability under any contract or agreement. This exclusion does not apply to liability for "Damages" that you would have in the absence of a contract or agreement or, under Insuring Agreement B, for liability assumed in an "Insured Contract."

17.  Any obligation you have under any workers compensation, disability benefits or unemployment compensation law or any similar law.

18.  The ownership, maintenance, use or entrustment of any aircraft, "Auto" or watercraft owned or operated by or for the benefit or rented or loaned to any "Insured." Use includes operation and "Loading or Unloading."

19.  "Bodily Injury" or "Property Damage" for which any "Insured" may be held liable by reason of:

    (1)  Causing or contributing to the intoxication of any person;

    (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

20.  Pollution

    (1)  "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        (a)  At or from any premises, site or location, which is or was at any time owned or occupied by, rented or leased to, any "Insured;"

        (b)  At or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

        (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

        (d)  At or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

            (1)  If the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor; or

            (2)  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(1) does not apply to "Bodily Injury" or "Property Damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or

released, or if such fuel, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "Insured", contractor or subcontractor.

Subparagraphs (a) and (d)(1) do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)     Any loss, cost or expense arising out of any:

    (a)     Request, demand or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b)     "Claim" by or on behalf of a governmental authority for "Damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes; acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

21.     Sexual misconduct, including

    (a)     Any welcome or unwelcome conduct, physical acts, gestures or spoken or written words of a sexual nature, including without limitation, sexual intimacy (even if consensual), sexual molestation, sexual assault, sexual battery, sexual abuse, sexual harassment, sexual exploitation or any sexual act; and

    (b)     The negligent employment, investigation, supervision, hiring, training, retention, or report or failure to report to proper authorities of a person for whom any "Insured" is or ever was responsible and whose conduct would be excluded in (a) above.

Also, this Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for the following:

22.     That part of an award or settlement payment that constitutes punitive, exemplary or multiple damages, fines penalties or taxes.

23.     Any "Claim" seeking relief or redress in any form other than money "Damages";

24.     Any "Claim" brought by or on behalf of any "Insured", or by any other corporation owned by any "Insured."

25.     Any "Claim" brought by, or on behalf of, any local, state or federal regulatory agency or other governmental entity, including, but not limited to, health care fraud and abuse proceedings.

## SECTION II - WHO IS AN INSURE

1.   If you are designated in the Declarations as:

    a.   An individual, you and your spouse are "Insureds", but only with respect to the conduct of a business of which you are a sole owner.

    b.   A partnership or joint venture, you are an "Insured." Your members, your partners and their spouses are also "Insureds", but only with respect to the conduct of your business.

    c.   A limited liability company, you are an "Insured." Your members are also "Insureds", but only with respect to the conduct of your business. Your managers are "Insureds", but only with respect to their duties as your managers.

    d.   An organization other than a partnership, joint venture or limited liability company, you are an "Insured." Your "Executive Officers" and directors are "Insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "Insureds" but only with respect to their liability as stockholders.

2.   Each of the following are also "Insureds":

Your "Employees" other than either your "Executive Officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture or corporation that is not shown as a Named "Insured" in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.   The Limit of Insurance shown in Item 3A of the Declarations for each "Occurrence" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Occurrence" under Insuring Agreements (A) or (B) regardless of the number of:

    a.   "Insureds"; or

    b.   Persons or organizations making "Claims."

2.   All "Claims" arising from continuous or related "Medical Incidents" to one person shall be treated as one "Occurrence" under Insuring Agreement (A).   All such "Medical Incidents" shall be considered to have taken place when the earliest such "Medical Incident" first takes place.

3.   The General Aggregate Limit shown in Item 3C of the Declarations is the most we will pay for the sum of all "Damages" and "Claims Expenses" under Insuring Agreements (A) and (B).

4.   The Products-Completed Operations Aggregate Limit shown in Item 3D of the Declarations is the most we will pay for all "Damages" under Insuring Agreement (B) because of "Bodily Injury" and "Property Damage" included in the "Products-Completed Operations Hazard."

5.    The Fire Damage Limit set forth in Item 3F of the Declarations is the most we will pay under Insuring Agreement (B) for "Damages" because of "Property Damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

5.    The Limit of Insurance shown in Item 3B of the Declarations for each "Claim" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Claim" under Insuring Agreement (C) regardless of the number of:

  a.    "Insureds"; or

  b.    Persons or organizations making "Claims."

7.    The Employee Benefit Aggregate Limit set forth in Item 3E of the Declarations is the most we will pay for the sum of all "Damages" and "Claims Expenses" under Insuring Agreement (C).

8.    The deductible amount stated in Item 4 of the Declarations applies to each "occurrence" under Insuring Agreements (A) and (B) and to each "Claim" under Insuring Agreement (C).  The deductible shall include "Damages" and "Claims Expenses" and shall be paid by the "Insured" upon demand from us.  The deductible reduces the available "Limit of Insurance" as stated in Items 3 A and 3 B of the Declarations.

"Claims" which may be subject to coverage under Insuring Agreements (A), (B) and/or (C) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, are limited to a total of one per occurrence or per claim limit of liability provided under this Policy.

# SECTION IV - CONDITIONS

1.    **Bankruptcy**

  Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Policy.

2.    **Reporting of an "Occurrence", offense, "Wrongful Act" or "Claim"**

  a.    You must see to it that we are notified as soon as practicable of an "Occurrence", an offense or a "Wrongful Act" which may result in a "Claim." To the extent possible, notice should include:

    (1)    Specific circumstances surrounding the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Programs";

    (2)    The names and addresses of any injured persons and witnesses; and

    (3)    The nature and location of any "Injury" or damage arising out of the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" or the Insured's "Employee Benefit Programs."

b.     If a "Claim" is made against any "Insured", you must:

     (1)     Immediately record the specifics of the "Claim" and the date received; and

     (2)     Notify us as soon as practicable, but in no event later than 30 days after the end of the "Policy Period."

           Notice is to be given to the party identified in Item 7 of the Declarations.

c.     You and any other involved "Insured" must:

     (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "Claim;"

     (2)     Authorize us to obtain records and other information;

     (3)     Cooperate with us in the investigation, defense or settlement of the "Claim" including:

          (a)  upon request, submit to examination and interrogation under oath by our representative,

          (b)  attend hearings, depositions and trials as requested by us,

          (c)  assist in securing and giving evidence and obtaining the attendance of witnesses,

          (d)  provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us

     (4)     Obtain our consent prior to the settlement of any "Claim"; and

     (5)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

d.     No "Insured" will, except at the "Insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.    Other Insurance**

If other valid and collectible insurance is available to the "Insured" for any "Claim" we cover under Insuring Agreements (A), (B) or (C), our obligations are limited as follows:

**a.     Primary Insurance**

     This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

(1)     Both you and we agree that in the event of any difference arising between us with reference to this Policy, such difference will be referred to three disinterested arbitrators, one being chosen by you, one chosen by us and the third chosen by the two aforesaid arbitrators before they enter into arbitration.

(2)     In case the first two arbitrators so chosen do not agree as to the third arbitrator within four weeks after both shall have accepted service, the third arbitrator shall be chosen by a court of record in the County in which the arbitration is pending.

(3)     Such arbitration shall take place in a County in the continental United States, chosen by us at our sole discretion. The expense of the arbitration shall be borne and paid as directed by the arbitrators.

(4)     In default of any party hereto qualifying its arbitrator within four weeks after receipt of written notice from the other party, requesting party may name both arbitrators and they shall proceed in all respects as stipulated herein.

(5)     The arbitrators may abstain from judicial formality and from following strictly the rules of law at their sole option.

(6)     Each party shall submit its case to the Court of Arbitration within four weeks of the close of the choice of the arbitrators.

(7)     The decision of the majority of arbitrators shall be final and binding on both parties.

## 12.    Insured's Warranty of Application and Loss Information

You, through your insurance brokers, have provided information to us which has induced us to issue this insurance Policy. Included in the information provided is an application and other correspondence including your "Claim" or loss history. This information is considered to be a part of this Policy.

You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to issue this Policy.

You, for all "Insureds" under the Policy, do warrant the truth of such information **AT THE EFFECTIVE DATE OF THIS POLICY.** You declare that you know of no incident, "Event", offense, circumstance or "Claim" which has taken place or become known prior to the effective date of this Policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the application or the information which was provided.

You understand that if such information is false or misleading, it may limit or avoid coverage under the Policy.

## 13.    Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named "Insured."

If you die, your rights and dutie_ .ill be transferred to your legal represent. e but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

14.    **Payment of deductible**

As a condition precedent to coverage under Insuring Agreements (A), (B) and (C), the "Insured" must pay "Damages" and "Claims Expenses" within the deduct ible upon demand from us.

# SECTION V - DEFINITIONS

1.    **"Administration"** means

    a.    Giving counsel to "Employees" with respect to the "Employee Benefit Programs";

    b.    Interpreting the "Employee Benefit Programs";

    c.    The handling of records in connection with the "Employee Benefit Programs; and

    d.    Effecting enrollment, termination or cancellation of "Employees" under the "Employee Benefit Programs" provided all such acts are authorized by you, but "Administration" does not mean:

        1.    The exercise of or failure to exercise any authority or control respecting:

            (a)    The management of any "Employee Benefit Programs"; or

            (b)    The investment or disposition of any "Employee Benefit Program"; or

        2.    The rendering of any advice with respect to the investment of any assets of any "Employee Benefit Program."

2.    **"Advertising Injury"** means injury arising out of one or more of the following offenses:

    a.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    b.    Oral or written publication of material that violates a person's right of privacy;

    c.    Misappropriation of advertising ideas or style of doing business; or

    d.    Infringement of copyright, title or slogan.

3.    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "Auto" does not include mobile equipment.

4.  **"Bodily Injury"** means "Bodily injury", sickness or disease sustained by a person, including death resulting from any of these at any time; mental injury and mental anguish.

5.  **"Claim/s"** means an oral or written demand against an "Insured" for "Damages."

6.  **"Claim Expenses"** means all reasonable and necessary fees, costs and expenses incurred in connection with the investigation, adjustment, defense, and appeal of a "Claim." "Claim expenses" do not include the salaries of the "Insured" or its employees.

7.  **"Coverage territory"** means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada; and

    b.  All parts of the world if your responsibility to pay "Damages" is determined in a suit on the merits in the territory described in Paragraph a. above or in a settlement we agree to.

8.  **"Damages"** means compensation, in money, which the "Insured" shall be obligated to pay by reason of judgment or settlement for liability to which this insurance applies provided, however, that "Damages" will not include:

    a.  any fines, penalties, taxes, punitive, exemplary or multiplied damages; or

    b.  any matters that may be deemed uninsurable under the law pursuant to which this Policy will be construed; or

    c.  any non-monetary relief or any restitution.

9.  **"Employee"** means a person on the "Insured's" regular payroll, with Federal and, if applicable, State taxes withheld, whose work is directed or controlled by the "Insured", including part-time and seasonal "Employees" and "Leased Workers." "Employee" does not include a "Temporary Worker".

10. **"Employee Benefit Programs"** means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security, disability insurance and death benefits insurance.

11. **"Event"** means an accident, or continuous, intermittent or repeated exposure to substantially the same harmful conditions.

12. **"Executive Officer"** means a person holding any of the officer positions created by your charter, constitution, by laws or any other similar governing document.

13. **"Impaired Property"** means tangible property, other than "Your Product" or "Your Work", that cannot be used or is less useful because:

    a.  It incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by:

HC 001 OC
Ed 0600

a.    The repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

b.    Your fulfilling the terms of the contract or agreement.

14.    **"Injury"** means "Bodily Injury", sickness, disease, mental injury, mental anguish, shock, disability, including injury arising from a continuous or repeated exposure to substantially the same harmful conditions, to one person.

15.    **"Insured"** means "you" and those persons or organizations qualifying as "Insureds" under Section II – Who Is An Insured.

16.    **"Insured Contract"** means:

a.    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured Contract";

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    An obligation as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

e.    An elevator maintenance agreement;

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)    That indemnifies a railroad for "Bodily Injury" or "Property Damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)    Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the "Injury" or "Damage"; or

(3)    Under which the "Insured", if an architect, engineer, or surveyor, assumes liability for an "Injury" or "Damage" arising out of the "Insured's" rendering or failure to render professional services,

including those ...ted in (2) above and supervisory, insp. ...ion, architectural or engineering activities.

17. **"Leased Worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

18. **"Loading or Unloading"** means the handling of property:

a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "Auto";

b. while it is in or on an aircraft, watercraft or "Auto"; or

c. while it is being moved from an aircraft, watercraft or "Auto" to the place where it is finally delivered;

but "Loading or Unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "Auto".

19. **"Medical Incident"** means any act, error or omission arising out of the providing of or failure to provide "Professional Health Care Services" by the "Insured" or any person for whom the "Insured" is legally responsible.

20. **"Occurrence"** means an event, or continuous, intermittent or repeated exposure to conditions which causes "Injury" under Insuring Agreement (A) or "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" under Insuring Agreement (B).

21. **"Personal Injury"** means "Injury", other than "Bodily Injury", arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. oral or written publication of material that violates a person's right of privacy.

22. **"Policy Period"** means the period of time specified in the Declarations as the effective dates of this Policy.

23. **"Products-Completed Operations Hazard"** means all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

a. Products that are still in your physical possession; or

b. Work that has not yet been completed or abandoned. However, "Your Work" will be deemed completed at the earliest of the following times:

(1)     when all of the work called for in your contract has been completed.

(2)     when all of the work to be done at the job site has been completed if your
contract calls for work at more than one job site.

(3)     when that part of the work done at a job site has been put to its intended use by   any   person   or
organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement but which is otherwise
complete will be treated as completed.

"Products-Completed Operations Hazard" does not include "Bodily Injury" or "Property Damage" arising out of:

a.      the transportation of property, unless the "Injury" or "Damage" arises out of a condition in or on a vehicle
not owned or operated by you, and that condition was created by the "Loading or Unloading" of that
vehicle by any "Insured;"

b.      the existence of tools, uninstalled equipment or abandoned or unused materials; or

c.      Products or operations for which the classification, listed in the Declarations or in
a Policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

24.     **"Professional Health Care Services"** means all services rendered or required to be rendered by an "Insured" in
the treatment or care of any person, including the furnishing of medical, nursing and other health care services,
such as physical and occupational therapy.  It also includes, but is not limited to, the furnishing or dispensing of
drugs, blood, blood products, or medical, surgical, dental or psychiatric supplies, equipment, or appliances in
connection with such care; the furnishing of food or beverages in connection with such care; the providing of
counseling or other social services in connection with such care; and the handling of, or the performance of post-
mortem examinations on, human bodies.

25.     **"Property Damage"** means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use
shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur
at the time of the "Occurrence" that caused it.

26.     **"Retroactive Date"** means the date specified in Item 6 of the Declarations.

27.     **"Temporary Worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave
or to meet seasonal short-term workload conditions.

28.     **"Underwriters"** means those "Underwriters" subscribing to this Policy.

29.     **"Wrongful Act"** means any negligent act, error or omission of the "Insured" or any other person for whose acts,
errors or omission the "Insured" is legally liable.

30. **"Your Product" means:**

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts, or equipment furbished in connection with such goods or products.

"Your Product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use or "Your Product"; and

    b.    The providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines, or other property rented to or located for the use of others but not sold.

31. **"Your Work" means:**

    a.    Work or operations performed by you or on your behalf; or

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

    b.    The providing of or failure to provide warnings or instructions.

*Anna Geralyne*

## Nursing Home Application-General Liability & Professional Liability
### (Complete separate application for each location)

**General Information**

| | |
|---|---|
| Name of Applicant | Richard Martin |
| Name of Business | Valley Grande Martin |
| Street Address | 801 Wildrose Lane |
| | Brownsville, Tx 78526 |
| Address of Location | same as above |

| Type of Enterprise: ☐ Individual  ☑ Corp.  ☐ Partnership  ☐ Joint Venture |
|---|
| ☐ For Profit  ☐ Non-Profit  ☐ Other |

| Date Established: |
|---|

| Estimated receipts/operating budget next 12 months: | 4,000,00 |
|---|---|
| Estimated payroll next 12 months: | 2,700,000 |

| Provide a full description of services rendered: |
|---|
| |

| Type of Facility | Number of licensed beds | Number of occupied beds |
|---|---|---|
| Nursing Home | 180 | 129 |
| ALF/Adult Foster Home/Home for the Aged | | |
| Group Home for the Retarded | | |
| Alcohol or Drug Treatment | | |
| Alcohol or Drug Detoxification | | |
| Shelter or Halfway House (adults only) | | |
| Home or Shelter for Children | | |
| Other (specify) | | |

| Other Operations | If "not applicable" indicate "N/A" |
|---|---|
| Counseling | Number of Visits |
| Day Care | Number of Attendees |
| Home Health Care | Receipts from operation |
| Other (specify) | |

| Describe therapy, other than drugs, used in course of treatment (i.e. Group therapy, individual counseling) |
|---|
| |



CRAVENS/WARREN
& COMPANY
P.O. Box 41370, Houston, Texas 77241-1370
Phone (713) 690-6000  Fax (713) 690-6020

1.

## Management:

| | |
|---|---|
| Length of time under present management: | _2 years – 9 mos._ |
| Length of time under present ownership: | _Same_ |

Is this facility run by an outside management company?    yes    (no)
If yes, name and corporate address:_____
Names and addresses of all similar facilities managed by the management company:

_____

_____

_____

Is the applicant engaged in, owned by, associated with or involved in any other
enterprise?  ☐ yes   ☐ no
If yes, provide names and addresses of all similar facilities owned:

— _Graham Oaks Care Center, Graham, TX_

—

Are you currently licensed for operation by the proper regulatory authorities?
☑ yes   ☐ no   If no, please explain
Is the license conditional?   ☐ yes   ☑ no
If yes, explain:
Has the license ever been revoked? ☐ yes   ☑ no
If yes, explain:

Do you have any professionals under contract?    (yes)   no
If yes, fully describe:  _Medical Director Contract_
Are certificates of insurance for professional liability required?   _No_
What limits required:

## Patient Profiles

| Patient Census | # Ambulatory | # Non-Ambulatory |
|---|---|---|
| Seriously mentally impaired (Alzheimers) | 2 | 32 |
| Somewhat mentally impaired (Senile) | 5 | 11 |
| Aged but mentally & physically fully functional | 5 | 10 |
| Drug or alcohol rehab | N/A | N/A |
| Skilled Nursing Care | 37 | 92 |
| Intermediate Nursing Care | N/A | N/A |
| Other (specify) | | |

| Bedridden | | N/A | 20 |
|---|---|---|---|

**Patient ages (indicate percentage by age):**

under 18  0 %     18-35  1 %     36-50  16 %     51-65  22 %     65 +  61 %

**Is facility:** (Co-ed)     Single sex

**Decubitus Ulcers**

| Stage | Acquired Ulcers | Inherited Ulcers | Reporting Period (month/year) |
|---|---|---|---|
| I | 0 | 0 | June 2000 |
| II | 8 | 8 | " " |
| III | 0 | 4 | " " |
| IV | 0 | 0 | " " |

## Monitoring & Controls:

What floors are the non-ambulatory patients on? _First Floor (One Level Only)_

How many on each floor? _N/A_

Are restraints used?  ☒yes  ☐no

If yes, describe procedures and percentage of patients normally restrained:
_Restraint Reduction Evaluation and ongoing Restraint Program_

What precautions are taken to keep track of patients? _Midnight Census Count_

Sign out procedures? ☒yes  ☐no

Alarms on doors to prevent clients from wandering from the home? ☒yes  ☐no

Electronic monitoring of patients with Senility or Alzheimers? ☒yes  ☐no

Does applicant control the possession of smoking materials?  Yes  (No)

Describe procedures: _Patients only allowed to smoke at scheduled Times and in designated Locations._

List any medication administered and in what form given(i.e. Methadone, pill)
_Lasix 20mg. pill_

Are medications kept under locked conditions?  (yes)  no

Do only authorized personnel have keys?  (Yes)  no

| | |
|---|---|
| Do any patients work full or part-time?    ☐yes    ☐no | |
| If yes, what type of work? | |
| Is any counseling provided?    ☑yes    ☐no | |
| If yes, describe. | |
| Are any medications administered?    ☑yes    ☐no | |
| If yes, describe. *Medications pass according to physicians order and Regulation 3.* | |

## Staffing

| Staff | 1st Shift | 2nd Shift | 3rd Shift |
|---|---|---|---|
| MD | | | |
| RN | 1 | 1 | |
| LPN | 8 | 8 | 4 |
| Nurse Aids | 13 | 11 | 9 |
| Psychologists | | | |
| Counselors | 1 | | |
| Therapists | 2 | 4 | |
| Administrator | 1 | 1 | |
| Other(specify) | 13 | | |

*Housekeeping - Administration, Kitchen, Laundry*

Are any of the above required to maintain own professional coverage?    ☐yes    ☑no
If yes, how is coverage verified?
At what minimum limits?

Is 24 hour supervision of employees provided?    ☑yes    ☐no
Are prior employment histories of employees checked?    ☑yes    ☐no
Are criminal background checks performed on all employees?    ☑yes    ☐no
Describe training of new employees for each class of employees:

RN: *4 Day Orientation with Co-Worker.*

LPN: *4-Day Orientation with Co-Worker*

Nurse Aids: *4-Day Orientation with Co-Worker*

Describe training of existing employees for each class of employees:

RN: Monthly inservices for continue training

LPN: monthly inservices for continuing training

Nurse Aide: monthly inservice for cont training

Describe procedure for maintaining copies of current licenses for all licensed employees/contractors: Business office and DON maintain licensure file, to update become renewal.

4.

## Physical Features of Building (If multiple buildings, answer for each)

| Is the insured a: ☐Building Owner   ☐Tenant   ☑General Lessee | |
|---|---|
| Construction of building | Brick/metal studs |
| Square feet | 44,090 |
| Year built | 1972 |
| Number of floors | one |
| Age and type of wiring | 28 yds./solid core |
| When was wiring last updated | No |
| Number of fire extinguishers | 18 |
| Number of fire escapes | 10 |
| Is the building sprinklered? | ☐Yes ☑No |
| Do all bedrooms/hallways have smoke detectors? | ☑Yes ☐No |
| Electronic or battery operated? | Electronic |
| Local fire alarm | ☑Yes ☐No |
| Central station fire alarm | ☑Yes ☐No |
| Distance to nearest fire station | one mile |
| Are handrails provided in hallways and bathrooms? | ☑Yes ☐No |
| Temperature of hot water | 110° |

| | |
|---|---|
| Swimming pool or hot tub<br>If yes, fenced with self locking gate?<br>Diving board?<br>Slide? | ☐yes<br>☑no<br>☐yes<br>☑no<br>☐yes<br>☑no<br>☐yes<br>☐no |
| Is there a written emergency evacuation plan in place? | ☑yes<br>☐no |

## Current Insurance

| Does applicant have Worker's Compensation coverage in force?   yes   (no) |
|---|

| | | |
|---|---|---|
| Has applicant had previous general liability AND professional liability insurance for this enterprise? | ☑yes   ☐no | |
| Insurance Company   *Evanston Insurance Co* | | |
| Prior limits of liability   $1,000,000 /$3,000,000 | | |
| Claims made or occurrence form<br>If claims made, retroactive date current policy   SM 803 797 | ☐C/M   ☑Occ<br>/    / | |
| Expiring Premium | | |
| Expiring Deductible/SIR | | |
| Policy Period   6-10-99 - 6-10-00 | | |
| Physical/sexual abuse & molestation covered during prior term?<br>If yes, what limits: | | |
| Punitive damages covered during prior term?<br>If yes, what limits? | ☐yes   ☐no | |

| | |
|---|---|
| Limits requested:   $1,000,000.ºº / $3,000,000.ºº | |
| Deductible (including LAE) requested   $10,000.ºº per claim | |
| Standard limits for Physical/sexual abuse are $25,000/$50,000.  Higher limits may<br>be available for select risks.  What limits requested? $100,000 | |
| Any prior complaints or incidents reported arising out of alleged or actual physical<br>or sexual abuse and molestation? ☐yes   ☑no<br>If yes, fully describe followup action taken: | |

## Claims History

| During the past five (5) years, have any claims been presented to your current or prior insurance carrier or to you? ☐ yes ☐ no | |
|---|---|
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |
| | |
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |
| | |
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |

Has applicant or any other person for whom insurance is being requested, aware of any circumstances, which may result in a claim? ☐ yes ☐ no
If yes, provide full details.

Is expiring carrier offering renewal? ☐ yes ☐ no
If "no" attach copy of non-renewal notice.
If expiring carrier offering renewal, explain reason for submitting account:

6.

*Completion of this form does not bind coverage. Applicant's acceptance of quotation is required prior to binding coverage and policy issuance. It is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to the policy.*

*If an order is received, the application is attached to the policy so it is necessary that all questions be answered in detail.*

*Notice applicable in most states:*
Any person who knowingly and with intent to defraud any Insurance Company or other person, files an application for insurance, or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any material fact, commits a

fraudulent insurance act, which is a crime and may also be subject to civil penalty.

| Applicant's Signature | *Robert Knight* |
| Title | *Administrator* |
| Date | *June 8, 2003* |

### For ALL Nursing Homes, we need the following:

**Hard copy, currently valued loss runs for last 5 years**
**Copy of license**
**Copy of current balance sheet and Statement of P&L**

7

# U.S. RISK, INC.

## 10210 N. Central Expressway Suite 500
### Dallas, Texas 75231

In consideration of the stipulations and premium shown, Underwriters do hereby bind themselves, each for his own part and not one for the other as follows: IN FAVOR OF THE INSURED whose name and address is shown, for the limits or amount specified herein, and for the term stipulated, according to the following:

| This Declaration Page is attached to and forms part of certificate provisions | (Form SLC-3 USA). |
|---|---|

| Previous No. | . | Authority Ref. No.   UP00US 36 | Certificate No.   UP00US360002 |
|---|---|---|---|

Name and Address of Insured:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX 78520

| Effective from   June 10, 2000 | to | June 10, 2001 |
|---|---|---|

both days at 12:01 a.m. local standard time

| Insurance is effective with certain Underwriters at Lloyd's, London  (See Security) | Percentage     —     100% |
|---|---|

| Amount | Coverage | Annual Premium | |
|---|---|---|---|
| See Coverage Part Declarations | Professional, General Liability | $135,000.00 | |
| | Employee Benefit Liability | $   2,500.00 | Inspection Fee |
| | | $   6,668.75 | State Tax |
| | | $      343.75 | Stamping Fee |
| | | $144,512.50 | Total |

Bed Rate: 5750.00

Operations:   Nursing Facility

Special Conditions:
The following forms apply to this Certificate: FORMS ATTACHED –

HC 001; HC SYN; HC 200; HC 201; HC 202; HC 203; HC401

Service of Suit may be made upon:
   Mssrs. Mendes and Mount
   750 Seventh Avenue
   New York, NY 10019-6829

| Issued at: | Dallas, Texas |
|---|---|
| | daj |

Date:  December 6, 2000

It is expressly understood and agreed by the Insured by accepting this Instrument that U.S. Risk, Inc. is not an Insurer hereunder and shall not be liable in any way nor to any extent whatsoever for any loss or claim

U. S. RISK UNDERWRITERS, INC.

Servicing Agent:

Craven/Warren & Co.
P.O. Box 41328
Houston, TX 77241-1328

**61**

BY: RANDALL G. GOSS, CHAIRMAN/CEO
Correspondent



*CANCELLATION ENDORSEMENT*

In consideration of the return premium of $85,055.00 this policy is hereby cancelled effective September 15, 2000.

| | |
|---|---|
| $85,055.00 | Return Premium |
| $ 4,125.17 | Return Surplus Lines Tax |
| $   212.64 | Return Stamping Office Fee |
| $89,392.81 | Total Return |

Attached to and forming part of No. UP00US360002 of Underwriters hereon.

Effective:      September 15, 2000

Insured:  Valley Grande Manor

HC 206
Ed 0600

On behalf of Underwriters
U. S. Risk Underwriters, Inc.
61

RANDALL G. GOSS, CHAIRMAN/CEO

By_____
(Authorized Representative)

# IMPORTANT NOTICE

# AVISO IMPORTANTE

1  To obtain information or make a
   complaint:

Para obtener informacion o para
someter una queja:

2  You may contact the Texas Department
   of Insurance to obtain information
   on companies, coverages, rights or
   complaints at:

Puede comunicarse con el
Departamento de Suguros de Texas
para obtener informacion acerca de
companieas, coberturas, derechos o
que jasal:

**1-800-252-3439**

**1-800-252-3439**

3  You may write the Texas
   Department of Insurance:

Puede escribir al Departmento de
Seguros de Texas:

P.O. Box 149104
Austin, TX  78714-9104
FAX #(512)475-1771

P.O. Box 149104
Austin, TX  78714-9104
FAX #(512)475-1771

4  PREMIUM OR
   CLAIM DISPUTES:

DISPUTAS SOBRE PRIMAS
O RECLAMOS:

Should you have a dispute
concerning your premium or
about a claim you should contact
the agent first.  If the dispute is
not resolved, you may contact the
Texas Department of Insurance.

Si tiene una disputa concerniente a
su prima o a reclamo, debe
comunicarse con el agente primero.
Si no se resuelve la disputa, puede
entonces comunicarse con el
departamento (TDI).

5  ATTACH THIS NOTICE
   TO YOUR POLICY:

UNA ESTE AVISO A
SU POLIZA:

This notice is for information
only and does not become a
part of condition of the attached
document.

Este aviso es solo para proposito
de informacion y no se convierte
en parte o condicion del documento
adjunto.

**GUARANTY FUND NONPARTICIPATION NOTICE**

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A SURPLUS LINES COVERAGE PURSUANT TO THE TEXAS INSURANCE STATUTES. THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE AND THIS INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER ARTICLE 21.28-C., INSURANCE CODE. ARTICLE 1.14-2 INSURANCE CODE, REQUIRES PAYMENT OF 4.85 PERCENT TAX ON GROSS PREMIUM.

SCHEDULE OF UNDERWRITERS

Certificate No: UP00US360002

This insurance contract includes this Schedule, the application presented by the "Insured", declarations and certificate, and all other endorsements, provisions, terms and conditions attached hereto and made a part hereof:

Underwriters at Lloyd's, London

| Underwriter Name | | | Participation |
|---|---|---|---|
| Syndicate | #1900 | NEW | 14.03% |
| | #2488 | AGM | 14.03% |
| | #376 | AGY | 10.53% |
| | #1047 | RGW | 10.53% |
| | #205 | HGJ | 10.53% |
| | #2027 | COX | 10.53% |
| | #1688 | HIH | 7.02% |
| | #861 | MDR | 3.16% |
| | #1209 | MEB | 3.86% |
| | #1411 | SUT | 5.26% |
| | #991 | AEG | 3.50% |
| | #1212 | SJ | 7.02% |

For and on behalf of Underwriters
U.S. Risk Underwriters, Inc.

By _____  61
RANDALL G. GOSS  CHAIRMAN/CEO
(Authorized Representative)

HC SYN
Ed 0600

## COVERAGE PART DECLARATIONS

Certificate No. UP00US360002

In consideration of and in accordance with the policy wording HC 001, the Declaration Page Form SLC-3 USA is completed as follows:

Item 3:  Limits of Insurance:

A. Each Occurrence Limit (Insuring Agreements A and B):          $1,000,000

B. Each Claim Limit (Insuring Agreement C):          $ EXCLUDED

C.   General Aggregate Limit (Other than Products-
          Completed Operations):          $2,000,000

D. Products-Completed Operations Aggregate Limit:          $ INCLUDED IN GENERAL AGGREGATE

E. Employee Benefits Liability Aggregate Limit:          $ EXCLUDED

F. Fire Damage Limit:          $50,000

Item 4:
Deductibles:          Insuring Agreements A and B:          $50,000
                      Insuring Agreement C          $ NOT APPLICABLE

Item 6:
Retroactive Date: NOT APPLICABLE

Item 7: Underwriters Representative:

U. S. Risk Underwriters, Inc.
10210 N. Central Expressway, Suite 500
Dallas, TX 75231

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE "INSURED"
AND THE POLICY PERIOD.

## SPECIFIED LOCATION ENDORSEMENT

It is agreed the insurance provided by this policy does not apply to any "Claim" for liability arising out of any operations of the "Insured" other than those operations as specified, described and located below:

Healthcare Facility:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX 78520

It is further understood and agreed that if the "Insured" purchases, organizes or otherwise acquires any healthcare facilities, other than as shown above, the "Insured" must, within 30 days furnish full information including a completed, signed and dated application to "Underwriters". "Underwriters" will determine the acceptability of the newly purchased, organized or acquired facility(s) and whether or not to add such location for coverage hereunder. If acceptable to "Underwriters", a premium charge will be determined and will be due and payable within 30 days thereafter.

HC 200
Ed. 0600                                          1

Neither Insuring Agreements (A); (B); nor (C) will apply to occurrences or wrongful acts which occurred prior to the purchase, organization or acquisition of the new healthcare facility(s). All other terms and conditions of this policy would apply unless endorsed otherwise.

Attached to and forming part of No. UP00US360002 of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U.S. Risk Underwriters, Inc.

61

RANDALL C. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC 200
Ed. 0600                                    2

N.M.A. 1998
(4/24/86)

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon

**MENDES & MOUNT
750 SEVENTH AVENUE
NEW YORK, NY  10019-6829**

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Attached to and forming part of No.  UP00US360002        Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

                                    61
By RANDALL G. GOSS, CHAIRMAN/CEO
    (Authorized Representative)

HC 201
Ed 0600

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-PHYSICAL DAMAGE-DIRECT N.M.A.1191

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*Note - If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BOARD) N.M.A.1256

This Policy*                                                             does not apply:

I.      Under any liability Coverage, to injury, sickness, disease, death or destruction

        (a)      with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b)      resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

        (a)      the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

        (b)      the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (c)      the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.     As used in this endorsement:

    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material, (1) containing byproduct material and (2) resulting from the

operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

    (a)    any nuclear reactor,

    (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:  As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

Other items and conditions remaining unchanged.

Attached to and forming part of Policy No. UP00US360002        of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

**61**

RANDALL G. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC 202
Ed 0600                      Page 2 of 2

## MINIMUM EARNED PREMIUM ENDORSEMENT

The minimum earned premium for this policy, regardless of term, will be 25% of the annual deposit premium, plus any applicable fees which are fully earned.

Attached to and forming part of No. UP00US360002    of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

HC 203
Ed 0600

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

61

RANDALL G. GOSS  CHAIRMAN/CEO
(Authorized Representative)

## AMENDATORY ENDORSEMENT

It is understood and agreed that SECTION I – COVERAGES (C) Employee Benefit Liability Insurance,  Page 1 of 20 of the policy Conditions is deleted.

Attached to and forming part of No. UP00US360002  of Underwriters hereon.

Effective: ·June 10, 2000

Insured:  Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

_____  61
BY RANDALL G. GOSS, CHAIRMAN/CEO
(Authorized Representative)

HC 401
Ed 0600

b.    **Excess Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.    When this insurance is excess over other insurance, we will have no duty under Insuring Agreements (A), (B) or (C) to defend the "Insured" against any "Claim" if any other insurer has the duty to defend the "Insured" against that "Claim."    If no other insurer defends, we may undertake to do so, at our discretion, but we will be entitled to the "Insured's" right against all those other insurers.

When this insurance is excess over any other insurance, we will pay, up to the applicable limits of this insurance, the amount of the "Claim" that exceeds the sum of the total amount that all such other insurance would pay for the "Claim" in the absence of this insurance.
If other insurance is also excess, we will share the remaining amount of the "Claim" with that other insurance.

c.    **Method of Sharing**

- If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "Claim" amount  remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

4.    **When Your Business Changes**

The first Named "Insured" must notify us of any change which might affect the terms of this insurance.

5.    **Transfer Of Rights Of Recovery Against Others To Us**

If the "Insured" has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair them. At our request, the "Insured" will bring suit or transfer those rights to us and help us enforce them.

6.    **When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named "Insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

7.    **Cancellation**

1.    The first Named "Insured" shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2.    We may cancel this Policy by mailing or delivering to the first Named "Insured" written notice of cancellation at least:

01/22/02  09:17 FAX 2816749226        U S RISK                  ⓩ029 ···

   a.     10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b.     30 days before the effective date of cancellation if we cancel for any other reason.

3.     We will mail or deliver our notice to the first Named "Insured's" last mailing address known to us.

4.     Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.     If this Policy is canceled, we will send the first Named "Insured" any premium refund due. If we cancel, the refund will be pro rata. If the first Named "Insured" cancels, the refund will be calculated as per the attached Short Rate Cancellation Scale. The cancellation will be effective even if we have not made or offered a refund.

6.     If notice is mailed, proof of mailing will be sufficient proof of notice.

## 8.   Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named "Insured" shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

## 9.   Premiums

The first Named "Insured" shown in the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

## 10.   Inspection and Audit

We will compute all premiums for this coverage in accordance with our rules and rates.

"Underwriters" shall be permitted but not obligated to inspect the "Insured's" premises and operations as they relate to this policy, at any time during the "Policy Period" and up to five years afterward.

Any premium shown on this policy is an advance premium and may be a deposit premium only. "Underwriters" have the option, if they so chose, at the expiration of this policy period, to investigate and audit based on a per bed rate per the policy "Declarations" page. Additional premium will be calculated based on the rules and rates in effect at the inception date of this policy. Audit premiums are due and payable upon notice to the "Insured".

## 11.   Good Faith and Binding Arbitration

   a.     Good Faith Clause:

      Both you and we have the same duty to handle "Claims" and other matters under a covenant of good faith and fair dealing between each other. Reasonable settlements considering the probable liabilities and interests of both parties shall be made whether involving your deductible amount or self-insured retention, costs of defense, our limit of liability or any combination thereof.

   b.     Binding Arbitration Clause:

# Health Care Facilities

Professional, General and Employee Benefit Liability
Policy
Occurrence Form

# Health Care Facilities
## Professional, General and Employee Benefit Liability Policy

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. COVERAGE UNDER INSURING AGREEMENT (C) EMPLOYEE BENEFIT LIABILITY IS PROVIDED ON A CLAIMS MADE BASIS. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

Throughout this Policy, the words "you" and "your" refer to the "Insured" shown in the Declarations, and any other person or organization qualifying as an "Insured" under SECTION II - WHO IS AN INSURED of this Policy. The words "we", "us" and "our" refer to the "Underwriters" providing this insurance. Other words and phrases that appear in quotation marks also have special meaning. Please refer to SECTION V - DEFINITIONS.

In consideration of the payment of the premium, in reliance upon the statements made and information provided in the Application, which is deemed attached hereto and incorporated in this Policy, and subject to all of the terms, conditions and limitations of this Policy and endorsements thereto, "Underwriters" agree with the "Insured" as follows:

# SECTION I - COVERAGES

1.    **Insuring Agreements**

   (A)    **Professional Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Occurrence" caused by a "Medical Incident;" provided that such "Medical Incident" first occurs in the "Coverage Territory" and during the "Policy Period."

   (B)    **Commercial General Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Bodily Injury" or "Property Damage" caused by an "Occurrence" or arising from "Personal Injury" or "Advertising Injury" caused by an offense; provided that the "Occurrence" or offense first takes place in the "Coverage Territory" and during the "Policy Period."

   (C)    **Employee Benefit Liability Insurance:**

   We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Claim" made against the "Insured" by any "Employee," former "Employee," or "Employee's" beneficiaries or legal representatives for injury caused by a "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Programs"; provided that the "Wrongful Act" first takes place in the "Coverage Territory" and subsequent to the "Retroactive Date" specified in Item 6 of the Declarations; provided the "Claim" is first made against the "Insured during the 'Policy Period'" and is reported in writing to us during the "Policy Period."

2.    **Claim Expenses**

We will have the right and duty to defend the "Insured" against any "Claim" that is covered by Insuring Agreements (A), (B) or (C).  However, we will have no duty to defend the "Insured" against any "Claim" to which this insurance does not apply. We may, at our discretion, investigate and settle any "Occurrence" or "Claim." The total amount we will pay for "Damages" and "Claims Expenses" is limited, as described in **SECTION III - LIMITS OF INSURANCE.** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of "Damages" and/or "Claims Expenses."

3.    **Exclusions**

(A)    **Exclusions Applicable to Insuring Agreement (A):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (A) does not apply to any "Occurrence" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.    Any "Medical Incident" committed while the professional license or registration to operate the "Insured" facility was suspended, revoked, surrendered, or otherwise terminated.

2.    Any "Medical Incident" committed while the "Insured's" professional license to dispense controlled substances was suspended, revoked, surrendered, or otherwise terminated.

3.    Any "Property Damage."

4.    Any "Personal Injury" or "Advertising Injury," except to the extent that such "Injury" relates to a "Medical Incident."

5.    Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

6.    Services performed by a licensed medical professional, including, but not limited to a physician, surgeon, dentist, chiropractor, podiatrist, osteopath, nurse midwife or nurse anesthetist; but this exclusion shall not apply to services performed by an "Employee" of the "Insured," or services performed solely as a medical director.

7.    Disputes about your fees or charges, including collection of fees from third parties.

8.    Any act as a member of a formal accreditation or professional review or licensing board or any similar board or committee.

(B)    **Exclusions Applicable to Insuring Agreement (B):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (B) does not apply to any "Occurrence " or offense based upon, arising out of, directly or indirectly relating to or in any way involving:

1.    A "Medical Incident."

2.    Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

3.    "Property Damage" to:

    (1)    Property you own, rent or occupy;

    (2)    Premises you sell, give away or abandon, if the "Property Damage" arises out of any part of those premises;

    (3)    Property loaned to you;

    (4)    Personal property in the care, custody or control of the "Insured;"

    (5)    That particular part of the real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "Property Damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "Your Work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "Your Work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "Property Damage" included in the "Products-Completed Operations Hazard."

4.    "Property Damage" to "Your Product" arising out of it or any part of it.

5.    "Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

6.    "Property Damage" to "Impaired Property" or property that has not been physically injured arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

    (2)    A delay, or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

7.    Any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

HC 001 OC
Ed 0600

Ø034    U S RISK    26187993226 XAF 61:90  20/22/10

(1)    "Your Product";

(2)    "Your Work"; or

(3)    "Impaired Property";

if such a product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

These exclusions do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III – LIMITS OF INSURANCE.

8.    "Personal Injury" or "Advertising Injury":

(1)    Arising out of oral or written publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

(2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the "Policy Period";

(3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "Insured";

9.    "Advertising Injury" arising out of:

(1)    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)    The failure of goods, products, or services to conform with advertised quality or performance;

(3)    The wrong description of the price of goods, products or services; or

(4)    An offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

(C)    **Exclusions Applicable to Insuring Agreement (C):**

In addition to the General Exclusions listed under (D) below, Insuring Agreement (C) does not apply to any "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.    A "Medical Incident."

2.    "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury."

3.    Libel, slander, discrimination or humiliation.

HC 001 OC
Ed 0600

4.    Any claim for failure of performance of contract by any "Insured", including failure or insolvency of any "Employee Benefit Program."

5.    Any claim based upon the "Insured's" failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, or any similar law.

6.    Any claim based upon the:

a.    failure of stock to perform as represented by an "Insured";

b.    advice given by an "Insured" to an "Employee" to participate or not to participate in stock subscription plans; or

c.    investment or non-investment of funds or the income yield therefrom.

**(D)    Exclusions Applicable to ALL INSURING AGREEMENTS:**

This Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for any "Occurrence", offense or "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.    "Bodily Injury" to:

(1)    An "Employee" of the "Insured" arising out of and in the course of:

(a)    Employment by the "Insured"; or

(b)    Performing duties related to the conduct of the "Insured's" business; or

(2)    The spouse, child, parent, brother or sister of that "Employee" as a consequence of the events described in paragraph (1) above.

This exclusion applies whether the "Insured" may be liable as an employer or in any other capacity and to any obligation to share "Damages" with or repay someone else who must pay "Damages" because of the "Injury."

This exclusion does not apply to "Claims" under Insuring Agreement B involving liability assumed by the "Insured" under an "Insured Contract."

2.    Any "Event", offense or "Medical Incident" committed prior to the effective date of this Policy if:

(a)    such "Claim" was the subject of a notice under any prior insurance policy or any prior or pending litigation; or

(b)    at the effective date of this Policy you knew or could have reasonably foreseen that such "Event", offense or "Medical Incident" might reasonably be expected to be the basis of a "Claim."

3.    Any "Injury", "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" expected or intended from the standpoint of the "Insured;"

4.    The "Insured's" activities and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; provided that this Exclusion (D)(4) shall not apply to Insuring Agreement (C).

5.    The "Insured's" employment practices of any kind, including but not limited to, (a) refusal to employ; (b) termination of employment; (c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination; (d) consequential "Bodily Injury" or "Personal Injury" as a result of any such employment practice;

6.    Alleged or real acts of discrimination by any "Insured" based on age, health, sex, sexual preference, disability, race, country of origin or religion;

7.    Express warranties or guarantees made by any "Insured;"

8. –  Any "Injury", "Bodily Injury" or "Property Damage" caused by any "Insured" while under the influence of intoxicants or narcotics;

9.    The real or alleged use or misuse of funds, grants or appropriations or for the return of such funds, grants or appropriations for any reason;

10.   Any actual or alleged failure, malfunction or inadequacy of electronic data processing equipment or media. This exclusion does not apply to a "Claim" arising out of the dispensing of drugs, life monitoring or elopement.

11.   "Bodily Injury," humiliation or emotional distress to any person arising out of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS);

12.   "Bodily Injury" to any person arising out of exposure to lead.

13.   Any "Bodily Injury" or "Property Damage" caused by or involving medical waste. Medical waste means isolation wastes, infectious agents, human blood and blood products, pathological wastes, sharps, body parts, contaminated bedding, surgical wastes, contaminated laboratory wastes and dialysis wastes.

14.   The existence of asbestos, or to any liability for any loss including, but not limited to, property damage, loss of use, loss of income, cost of inspection, cost of removal, cost of disposal, cost of repair or replacement, "Bodily Injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time arising out of the manufacture of, mining of, use of, sale of, installation of, distribution of, removal of, encapsulation of, presence of, or exposure to asbestos, or to any obligation on your part to indemnify any party because of "Damages" arising out of such loss, damage, or injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos.

15.   A criminal act or fraud or dishonesty committed by any "Insured."

16.    Liability under any contract or agreement. This exclusion does not apply to liability for "Damages" that you would have in the absence of a contract or agreement or, under Insuring Agreement B, for liability assumed in an "Insured Contract."

17.    Any obligation you have under any workers compensation, disability benefits or unemployment compensation law or any similar law.

18.    The ownership, maintenance, use or entrustment of any aircraft, "Auto" or watercraft owned or operated by or for the benefit or rented or loaned to any "Insured." Use includes operation and "Loading or Unloading."

19.    "Bodily Injury" or "Property Damage" for which any "Insured" may be held liable by reason of:

    (1)    Causing or contributing to the intoxication of any person;

    (2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

20.    Pollution

    (1)    "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        (a)    At or from any premises, site or location, which is or was at any time owned or occupied by, rented or leased to, any "Insured;"

        (b)    At or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

        (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

        (d)    At or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

            (1)    If the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor; or

            (2)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(1) does not apply to "Bodily Injury" or "Property Damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or

01/22/02  09:21 FAX 2818799226          U S RISK          ☒038

released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

Subparagraphs (a) and (d)(1) do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    (2)    Any loss, cost or expense arising out of any:

        (a)    Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (b)    "Claim" by or on behalf of a governmental authority for "Damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes; acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

21.    Sexual misconduct, including

    (a)    Any welcome or unwelcome conduct, physical acts, gestures or spoken or written words of a sexual nature, including without limitation, sexual intimacy (even if consensual), sexual molestation, sexual assault, sexual battery, sexual abuse, sexual harassment, sexual exploitation or any sexual act; and

    (b)    The negligent employment, investigation, supervision, hiring, training, retention, or report or failure to report to proper authorities of a person for whom any "insured" is or ever was responsible and whose conduct would be excluded in (a) above.

Also, this Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for the following:

22.    That part of an award or settlement payment that constitutes punitive, exemplary or multiple damages, fines penalties or taxes.

23.    Any "Claim" seeking relief or redress in any form other than money "Damages";

24.    Any "Claim" brought by or on behalf of any "insured", or by any other corporation owned by any "insured."

25.    Any "Claim" brought by, or on behalf of, any local, state or federal regulatory agency or other governmental entity, including, but not limited to, health care fraud and abuse proceedings.

HC 001 OC
Ed 0600

## SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are "Insureds", but only with respect to the conduct of a business of which you are a sole owner.

    b.  A partnership or joint venture, you are an "Insured." Your members, your partners and their spouses are also "Insureds", but only with respect to the conduct of your business.

    c.  A limited liability company, you are an "Insured." Your members are also "Insureds", but only with respect to the conduct of your business. Your managers are "Insureds", but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an "Insured." Your "Executive Officers" and directors are "Insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "Insureds" but only with respect to their liability as stockholders.

2.  Each of the following are also "Insureds":

    Your "Employees" other than either your "Executive Officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture or corporation that is not shown as a Named "Insured" in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.  The Limit of Insurance shown in Item 3A of the Declarations for each "Occurrence" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Occurrence" under Insuring Agreements (A) or (B) regardless of the number of:

    a.  "Insureds"; or

    b.  Persons or organizations making "Claims."

2.  All "Claims" arising from continuous or related "Medical Incidents" to one person shall be treated as one "Occurrence" under Insuring Agreement (A).   All such "Medical Incidents" shall be considered to have taken place when the earliest such "Medical Incident" first takes place.

3.  The General Aggregate Limit shown in Item 3C of the Declarations is the most we will pay for the sum of all "Damages" and "Claims Expenses" under Insuring Agreements (A) and (B).

4.  The Products-Completed Operations Aggregate Limit shown in Item 3D of the Declarations is the most we will pay for all "Damages" under Insuring Agreement (B) because of "Bodily Injury" and "Property Damage" included in the "Products-Completed Operations Hazard."

5.  The Fire Damage Limit set forth in Item 3F of the Declarations is the most we will pay under Insuring Agreement (B) for "Damages" because of "Property Damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6.  The Limit of Insurance shown in Item 3B of the Declarations for each "Claim" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Claim" under Insuring Agreement (C) regardless of the number of:

    a.  "Insureds"; or

    b.  Persons or organizations making "Claims."

7.  The Employee Benefit Aggregate Limit set forth in Item 3E of the Declarations is the most we will pay for the sum of all "Damages" and "Claims Expenses" under Insuring Agreement (C).

8.  The deductible amount stated in Item 4 of the Declarations applies to each "occurrence" under Insuring Agreements (A) and (B) and to each "Claim" under Insuring Agreement (C). The deductible shall include "Damages" and "Claims Expenses" and shall be paid by the "Insured" upon demand from us. The deductible reduces the available "Limit of Insurance" as stated in Items 3 A and 3 B of the Declarations.

"Claims" which may be subject to coverage under Insuring Agreements (A), (B) and/or (C) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, are limited to a total of one per occurrence or per claim limit of liability provided under this Policy.

## SECTION IV - CONDITIONS

1.  **Bankruptcy**

    Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Policy.

2.  **Reporting of an "Occurrence", offense, "Wrongful Act" or "Claim"**

    a.  You must see to it that we are notified as soon as practicable of an "Occurrence", an offense or a "Wrongful Act" which may result in a "Claim." To the extent possible, notice should include:

        (1)  Specific circumstances surrounding the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Programs";

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any "Injury" or damage arising out of the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" or the Insured's "Employee Benefit Programs."

b.   If a "Claim" is made against any "Insured", you must:

    (1)   Immediately record the specifics of the "Claim" and the date received; and

    (2)   Notify us as soon as practicable, but in no event later than 30 days after the end of the "Policy Period."

    Notice is to be given to the party identified in Item 7 of the Declarations.

c.   You and any other involved "Insured" must:

    (1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "Claim;"

    (2)   Authorize us to obtain records and other information;

    (3)   Cooperate with us in the investigation, defense or settlement of the "Claim" including:

        (a)  upon request, submit to examination and interrogation under oath by our representative,

        (b)  attend hearings, depositions and trials as requested by us,

        (c)  assist in securing and giving evidence and obtaining the attendance of witnesses,

        (d)  provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us

    (4)   Obtain our consent prior to the settlement of any "Claim"; and

    (5)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

d.   No "Insured" will, except at the "Insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.   Other Insurance**

If other valid and collectible insurance is available to the "Insured" for any "Claim" we cover under Insuring Agreements (A), (B) or (C), our obligations are limited as follows:

a.   **Primary Insurance**

    This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

(1)    Both you and we agree that in the event of any difference arising between us with reference to this Policy, such difference will be referred to three disinterested arbitrators, one being chosen by you, one chosen by us and the third chosen by the two aforesaid arbitrators before they enter into arbitration.

(2)    In case the first two arbitrators so chosen do not agree as to the third arbitrator within four weeks after both shall have accepted service, the third arbitrator shall be chosen by a court of record in the County in which the arbitration is pending.

(3)    Such arbitration shall take place in a County in the continental United States, chosen by us at our sole discretion. The expense of the arbitration shall be borne and paid as directed by the arbitrators.

(4)    In default of any party hereto qualifying its arbitrator within four weeks after receipt of written notice from the other party, requesting party may name both arbitrators and they shall proceed in all respects as stipulated herein.

(5)    The arbitrators may abstain from judicial formality and from following strictly the rules of law at their sole option.

(6)    Each party shall submit its case to the Court of Arbitration within four weeks of the close of the choice of the arbitrators.

(7)    The decision of the majority of arbitrators shall be final and binding on both parties.

## 12.    Insured's Warranty of Application and Loss Information

You, through your insurance brokers, have provided information to us which has induced us to issue this insurance Policy. Included in the information provided is an application and other correspondence including your "Claim" or loss history. This information is considered to be a part of this Policy.

You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to issue this Policy.

You, for all "Insureds" under the Policy, do warrant the truth of such information **AT THE EFFECTIVE DATE OF THIS POLICY.** You declare that you know of no incident, "Event", offense, circumstance or "Claim" which has taken place or become known prior to the effective date of this Policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the application or the information which was provided.

You understand that if such information is false or misleading, it may limit or avoid coverage under the Policy.

## 13.    Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named "Insured."

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

14.    **Payment of deductible**

As a condition precedent to coverage under Insuring Agreements (A), (B) and (C), the "Insured" must pay "Damages" and "Claims Expenses" within the deductible upon demand from us.

# SECTION V - DEFINITIONS

1.    **"Administration"** means

a.    Giving counsel to "Employees" with respect to the "Employee Benefit Programs";

b.    Interpreting the "Employee Benefit Programs";

c.    The handling of records in connection with the "Employee Benefit Programs; and

d.    Effecting enrollment, termination or cancellation of "Employees" under the "Employee Benefit Programs" provided all such acts are authorized by you, but "Administration" does not mean:

    1.    The exercise of or failure to exercise any authority or control respecting:

        (a)    The management of any "Employee Benefit Programs"; or

        (b)    The investment or disposition of any "Employee Benefit Program"; or

    2.    The rendering of any advice with respect to the investment of any assets of any "Employee Benefit Program."

2.    **"Advertising injury"** means injury arising out of one or more of the following offenses:

a.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b.    Oral or written publication of material that violates a person's right of privacy;

c.    Misappropriation of advertising ideas or style of doing business; or

d.    Infringement of copyright, title or slogan.

3.    **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "Auto" does not include mobile equipment.

4.      **"Bodily Injury"** means "Bodily Injury", sickness or disease sustained by a person, including death resulting from any of these at any time; mental injury and mental anguish.

5.      **"Claim/s"** means an oral or written demand against an "Insured" for "Damages."

6.      **"Claim Expenses"** means all reasonable and necessary fees, costs and expenses incurred in connection with the investigation, adjustment, defense, and appeal of a "Claim."   "Claim expenses" do not include the salaries of the "Insured" or its employees.

7.      **"Coverage territory"** means:

        a.      The United States of America (including its territories and possessions), Puerto Rico and Canada; and

        b.      All parts of the world if your responsibility to pay "Damages" is determined in a suit on the merits in the territory described in Paragraph a. above or in a settlement we agree to.

8.      **"Damages"** means compensation, in money, which the "Insured" shall be obligated to pay by reason of judgment or settlement for liability to which this insurance applies provided, however, that "Damages" will not include:

        a.      any fines, penalties, taxes, punitive, exemplary or multiplied damages; or

        b.      any matters that may be deemed uninsurable under the law pursuant to which this Policy will be construed; or

        c.      any non-monetary relief or any restitution.

9.      **"Employee"** means a person on the "Insured's" regular payroll, with Federal and, if applicable, State taxes withheld, whose work is directed or controlled by the "Insured", including part-time and seasonal "Employees" and "Leased Workers."   "Employee" does not include a "Temporary Worker".

10.     **"Employee Benefit Programs"** means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security, disability insurance and death benefits insurance.

11.     **"Event"** means an accident, or continuous, intermittent or repeated exposure to substantially the same harmful conditions.

12.     **"Executive Officer"** means a person holding any of the officer positions created by your charter, constitution, by laws or any other similar governing document.

13.     **"Impaired Property"** means tangible property, other than "Your Product" or "Your Work", that cannot be used or is less useful because:

        a.      It incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

        b.      You have failed to fulfill the terms of a contract or agreement;

        If such property can be restored to use by:

HC 001 OC
Ed 0600

Page 16 of 20

a.   The repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

b.   Your fulfilling the terms of the contract or agreement.

14.  **"Injury"** means "Bodily Injury", sickness, disease, mental injury, mental anguish, shock, disability, including injury arising from a continuous or repeated exposure to substantially the same harmful conditions, to one person.

15.  **"Insured"** means "you" and those persons or organizations qualifying as "insureds" under Section II – Who Is An Insured.

16.  **"Insured Contract"** means:

a.   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured Contract";

b.   A sidetrack agreement;

c.   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.   An obligation as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

e.   An elevator maintenance agreement;

f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)   That indemnifies a railroad for "Bodily Injury" or "Property Damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)   Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)   Giving directions or instructions, or failing to give them, if that is the primary cause of the "Injury" or "Damage"; or

(3)   Under which the "Insured", if an architect, engineer, or surveyor, assumes liability for an "Injury" or "Damage" arising out of the "insured's" rendering or failure to render professional services,

01/22/02  09:24 FAX 2816749226    U S RISK    ☑046

including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

17.   **"Leased Worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

18.   **"Loading or Unloading"** means the handling of property:

  a.   after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "Auto";

  b.   while it is in or on an aircraft, watercraft or "Auto"; or

  c.   while it is being moved from an aircraft, watercraft or "Auto" to the place where it is finally delivered;

  but "Loading or Unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "Auto".

19.   **"Medical Incident"** means any act, error or omission arising out of the providing of or failure to provide "Professional Health Care Services" by the "Insured" or any person for whom the "Insured" is legally responsible.

20.   **"Occurrence"** means an event, or continuous, intermittent or repeated exposure to conditions which causes "Injury" under Insuring Agreement (A) or "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" under Insuring Agreement (B).

21.   **"Personal Injury"** means "Injury", other than "Bodily Injury", arising out of one or more of the following offenses:

  a.   false arrest, detention or imprisonment;

  b.   malicious prosecution;

  c.   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

  d.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  e.   oral or written publication of material that violates a person's right of privacy.

22.   **"Policy Period"** means the period of time specified in the Declarations as the effective dates of this Policy.

23.   **"Products-Completed Operations Hazard"** means all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

  a.   Products that are still in your physical possession; or

  b.   Work that has not yet been completed or abandoned. However, "Your Work" will be deemed completed at the earliest of the following times:

(1)      when all of the work called for in your contract has been completed.

(2)      when all of the work to be done at the job site has been completed if your
contract calls for work at more than one job site.

(3)      when that part of the work done at a job site has been put to its intended use by   any   person   or
organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement but which is otherwise
complete will be treated as completed.

"Products-Completed Operations Hazard" does not include "Bodily Injury" or "Property Damage" arising out of:

a.      the transportation of property, unless the "Injury" or "Damage" arises out of a condition in or on a vehicle
not owned or operated by you, and that condition was created by the "Loading or Unloading" of that
vehicle by any "insured;"

b.      the existence of tools, uninstalled equipment or abandoned or unused materials; or

c.      Products or operations for which the classification, listed in the Declarations or in
a Policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

24.    **"Professional Health Care Services"** means all services rendered or required to be rendered by an "insured" in
the treatment or care of any person, including the furnishing of medical, nursing and other health care services,
such as physical and occupational therapy.  It also includes, but is not limited to, the furnishing or dispensing of
drugs, blood, blood products, or medical, surgical, dental or psychiatric supplies, equipment, or appliances in
connection with such care; the furnishing of food or beverages in connection with such care; the providing of
counseling or other social services in connection with such care; and the handling of, or the performance of post-
mortem examinations on, human bodies.

25.    **"Property Damage"** means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use
shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur
at the time of the "Occurrence" that caused it.

26.    **"Retroactive Date"** means the date specified in Item 6 of the Declarations.

27.    **"Temporary Worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave
or to meet seasonal short-term workload conditions.

28.    **"Underwriters"** means those "Underwriters" subscribing to this Policy.

29.    **"Wrongful Act"** means any negligent act, error or omission of the "insured" or any other person for whose acts,
errors or omission the "insured" is legally liable.

30.    **"Your Product"** means:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts, or equipment furbished in connection with such goods or products.

"Your Product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use or "Your Product"; and

    b.    The providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines, or other property rented to or located for the use of others but not sold.

31.    **"Your Work"** means:

    a.    Work or operations performed by you or on your behalf; or

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

    b.    The providing of or failure to provide warnings or instructions.

```
ēēēēēēēēēēēēēēēēēēēē⌐   BINDER & POLICY DETAIL <⌐   ⌐ēēēēēēēēēēēēēēēēēēēᵢ
   Detail Number          °  Insd 150238  Valley Grande Manor            °
      200449              °. Pdcr   15829  U.S. Risk (CSL)               °
ēēēēēēēēēēēēēēēēēēēēēēēç  Mkt    1005  Alexander Forbes              °
   Detail Status           °  Carr   1535  UP00US36                      °
      C   Canceled         °  Cntr  U    Prog Cd  HLCR     Line Cd  50   °
ēēēēēēēēēēēēēēēēēēēēēēūēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēē°
   Binder Number                    Binder Inception Date               °
                                    Binder Expiration Date              °
                                                                        °
   Binder Effective Time  12:01 a   Expires: X 12:01 am   Noon          °
                                                                        °
   1st Binder Extension Inception          Expiration                   °
   2nd Binder Extension Inception          Expiration                   °
      This binder is issued to extend coverage in the above named company per °
   *  expiring policy below.      Expiring Policy Number                °
                                                                        °
ēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēē°
   Policy Number    UP00US360002      Policy Inception Date   06-10-2000 °
   Loan Number                        Policy Expiration Date  09-15-2000 °
                                      SL Control Number                  °
ēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēēf
Window°Enter °Sv °Options°       °SoftKeys°        °QUOTE.DETAIL °200449 °
ÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÔÁÁÁÁÁÁÁÁÁÁÔÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÔÁÁÁÁÁÁÁÁÁÁÁÁÁÁÁÔÁÁÁÁÁÁÁÁÁÇ
Ed Off°FILTER°           °Brj   °Becky        °               °Level  1°
```

'rinted by: BRJ   01-22-02   03:47PM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CERTAIN UNDERWRITERS AT            §
LLOYDS, LONDON,                    §
Subscribing to Policy No.UP00US360002,  §
          Plaintiff,               §
                                   §
V.                                 §          C.A. No. B-03-081
                                   §
                                   §
VALLEY GRANDE MANOR, INC.,         §
D/B/A VALLEY GRANDE MANOR,         §
          Defendant,               §

## AFFIDAVIT OF J. BRIAN HOBBS

THE STATE OF TEXAS     §

COUNTY OF DALLAS       §

BEFORE ME, the undersigned authority, on this day personally appeared J. BRIAN HOBBS, known to me to be the person whose name is subscribed to the foregoing instrument, and after being duly sworn upon his oath, said:

1.   My name is J. Brian Hobbs. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.   I am the program director for Professional Claims Managers, Inc. ("PCM"). PCM acts as the third party claims administrator for Certain Underwriters at Lloyds, London, Subscribing to Policy No. UP00US360002 ("Underwriters").

3.   On or about June 10, 2000, Underwriters entered into Policy No. UP00US360002 with Defendant. Such policy was in effect at the time the Morales suit was brought against Defendant. The claims asserted therein were covered claims under the policy and, as such, Underwriters, through PCM, undertook the defense and indemnity of Defendant in the Morales suit.

4.   In the course of defending the Morales suit, Underwriters incurred and paid for $21,112.76 in defense costs and lost adjustment expenses associated with the Morales suit. The Morales suit was eventually settled for $130,000.00, $25,000.00 of which was attributable to Defendant.



EXHIBIT
B

5.    Such policy contains a $50,000.00 deductible which applies to each claim and which applies to both "damages" and "claim expenses"as defined under the policy.  Underwriters funded Defendant's portion of the loss settlement in the Morales suit ("damages"), and additionally funded $21,112.76 in defense costs to defend the Morales suit ("claim expenses").  Defendant has never paid the $50,000.00 deductible to Underwriters, despite repeated formal demands made by PCM on behalf of Underwriters on Defendant on September 4, 2002, September 18, 2002, November 8, 2002, and December 3, 2002.  The amount owed Underwriters by Defendant is just and true, is due, and allows all just and lawful offsets, payments, and credits.

6.    As a consequence of Defendant's failure to make payment for the deductible amount, Underwriters, through PCM, was required to retain the undersigned in an attempt to collect the deductible amount, and has incurred additional attorney fees with respect to the prosecution of this suit.

J. BRIAN HOBBS

SWORN TO AND SUBSCRIBED BEFORE ME by the said J. Brian Hobbs on this 30th day of June, 2003, to certify which witness my hand and seal of office.

NOTARY PUBLIC, STATE OF TEXAS

**EXHIBIT**

B

**Professional Cla\_ \_s Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500  •  Dallas, Texas 75231

September 4, 2002

**Personal & Confidential**
Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX  78520

*Via Facsimile No.: (678) 781-2450*
*and & Via CMRRR: 7118 5603 3960 3551 4142*

|  |  |  |
|---|---|---|
| Re: | PCM Claim No.: | 2654 |
|  | Insured: | Valley Grande Manor Inc. d/b/a Valley Grande Manor |
|  | Claimant: | Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales |

Dear Mr. Martin:

As you know, this case was recently settled for all parties for $130,000; $25,000 of which was attributable to Valley Grande Manor's ("VGM") Policy UP00US360002. Your Policy contains a $50,000 deductible which applies to each claim, which applies to both "damages" and "claim expenses". Our records indicate that we have previously invoiced you for $17,558.41 for defense costs and loss adjustment expenses associated with this claim. However, defense counsel has advised us they have received no payments to date.

Enclosed are, for your convenience, copies of all invoices previously submitted to you and remain unpaid. Pursuant to the terms of the Policy, Valley Grande needs to remit payment on theses invoices immediately.

Please be advised that defense counsel's Work in Progress ("WIP") invoice is an incomplete invoice and only has charges up to a certain date. Defense counsel continues to accrue expenses through the conclusion of this matter. Also, Guardian ad Litem fees are expected and will be submitted at a later date.

Thank you for your prompt attention to this request. If you have any questions, please contact me directly at (214) 265-2410.

Sincerely yours,

Anita Deschner
Claims Manager

AD:ms

F:\users\anitad\Forbes\2654\insd.deductible request LAE.DOC

EXHIBIT
C

Mr. Richard Martin
September 4, 2002
Page 2

Encls.

cc:     Eileen Leeds, Esq.                        <u>Via Facsimile #: (956) 541-1893</u>
       **WILLETTE & GUERRA LLP**
       3505 Boca Chica Blvd.
       Brownsville, TX 78521

![Professional Claims Managers logo] **Professional Claims Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500 • Dallas, Texas 75231

September 4, 2002

Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX 78520

*Via Facsimile No.:* ~~(678) 781-2450~~
*and & Via CMRRR: 7118 5603 3960 3551 4142*

Re:    PCM Claim No.:    2654
    Insured:    Valley Grande Manor Inc. d/b/a Valley Grande Manor
    Claimant:    Martha Flores, Individually and on Behalf of the Estate of
                   Jose De Jesus Morales

Dear Mr. Martin:

As you know, this case was recently settled for all parties for $130,000; $25,000 of which was attributable to Valley Grande Manor's ("VGM") Policy UP00US360002. In order to conclude the settlement and obtain the release, we must fund the settlement in a timely manner. Your Policy contains a $50,000 deductible which applies to each claim, which applies to both "damages" and "claims expenses". Our records indicate that we have previously invoiced you for $17,558.41 for defense costs associated with this claim.

So as to comply with the Policy's requirements and allow conclusion of the settlement, please immediately send a check in the amount of **$25,000** for the amounts owed under your deductible. Your check should be made payable to Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales, and as next friend of Guillermo Morales, Jose De Jesus, Jr., Juan Morales and Jonathan Morales, Minor children  Eva Alvarez as Next Friend of Diego De Jesus Morales Alvarez, a Minor Child and Felicitas Franco Ramos, Plaintiffs and their attorney Todd C. Feder and must be **mailed to defense counsel by September 12, 2002.**

Please send the check to the following person:

    Eileen Leeds, Esq.
    **WILLETTE & GUERRA LLP**
    3505 Boca Chica Blvd., Suite 460
    Brownsville, TX 78521

In exchange for this payment, Plaintiff will provide a complete and full release.

F:\users\anita\Forbes\2654\insd deductible requestLOSS.DOC



EXHIBIT
C

Mr. Richard Martin
September 4, 2002
Page 2

Thank you for your prompt attention to this request. If you have any questions, please contact me directly at (214) 265-2410.

Sincerely yours,

Anita Deschner
Claims Manager

AD:ms

cc:    Eileen Leeds, Esq.                    <u>Via Facsimile #: (956) 541-1893</u>
       **WILLETTE & GUERRA LLP**
       3505 Boca Chica Blvd.
       Brownsville, TX 78521

**Professional Claims Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500  •  Dallas, Texas 75231

September 18, 2002

Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX 78520

*Via Facsimile No.: ~~(678) 781-2430~~*
*and Via Overnight Mail*

Re:    PCM Claim No.:    2654
        Insured:          Valley Grande Manor Inc. d/b/a Valley Grande Manor
        Claimant:       Martha Flores, Individually and on Behalf of the Estate of
                          Jose De Jesus Morales

Dear Mr. Martin:

This is in follow-up to our previous letter of September 4, 2002 in which we requested a check from you for settlement of this case. We have not received a copy of your check that was to be forwarded to defense counsel by September 12, 2002. Defense counsel has advised that they have not received funds from you.

As you know, this case was settled for all parties for $130,000; $25,000 of which was attributable to Valley Grande Manor's ("VGM") Policy UP00US360002. In order to conclude the settlement and obtain the release, we must fund the settlement in a timely manner. Your Policy contains a $50,000 deductible which applies to each claim, which applies to both "damages" and "claims expenses". Our records indicate that we have previously invoiced you for $17,558.41 for defense costs associated with this claim.

So as to comply with the Policy's requirements and allow conclusion of the settlement, please immediately send a check in the amount of **$25,000** for the amounts owed under your deductible. Your check should be made payable to *Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales, and as next friend of Guillermo Morales, Jose De Jesus, Jr., Juan Morales and Jonathan Morales, Minor children Eva Alvarez as Next Friend of Diego De Jesus Morales Alvarez, a Minor Child and Felicitas Franco Ramos, Plaintiffs and their attorney Todd C. Feder* and must be **mailed to defense counsel by September 20, 2002.**

Please send the check to the following person:

        Eileen Leeds, Esq.
        **WILLETTE & GUERRA LLP**
        3505 Boca Chica Blvd., Suite 460
        Brownsville, TX 78521



EXHIBIT
C

Mr. Richard Martin
September 18, 2002
Page 2

In exchange for this payment, Plaintiff will provide a complete and full release.

Thank you for your prompt attention to this request.  If you have any questions or are financially unable to provide this check by this Friday, please contact me directly at (214) 265-2410 to discuss this matter further.

Sincerely yours,

Anita Deschner
Claims Manager

AD:ms

cc:     Eileen Leeds, Esq.                              Via Facsimile #: (956) 541-1893
        **WILLETTE & GUERRA LLP**
        3505 Boca Chica Blvd.
        Brownsville, TX 78521

**Professional Clai...s Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500 • Dallas, Texas 75231

September 18, 2002

*Personal & Confidential*
Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX 78520

*Via Facsimile No.: (678) 781-2450*
*and Via overnight mail*

Re:   PCM Claim No.:   2654
      Insured:         Valley Grande Manor Inc. d/b/a Valley Grande Manor
      Claimant:        Martha Flores, Individually and on Behalf of the Estate of
                       Jose De Jesus Morales

Dear Mr. Martin:

This is in follow-up to our previous letter of September 4, 2002 in which we requested invoices totaling $17,558.41 be paid immediately. Our records indicate that we have previously invoiced you for $17,558.41 for defense costs and loss adjustment expenses associated with this claim. However, defense counsel has advised us they have received no payments to date. We have not received copies of your checks indicating these invoices have been paid and must assume that no invoices have been paid.

As you know, this case was recently settled for all parties for $130,000; $25,000 of which was attributable to Valley Grande Manor's ("VGM") Policy UP00US360002. Your Policy contains a $50,000 deductible which applies to each claim, which applies to both "damages" and "claim expenses".

Pursuant to the terms of the Policy, Valley Grande needs to remit payment of all invoices submitted by **September 20, 2002.**

Please be advised that defense counsel's Work in Progress ("WIP") invoice is an incomplete invoice and only has charges up to a certain date. Defense counsel continues to accrue expenses through the conclusion of this matter. Also, Guardian ad Litem fees are expected and will be submitted at a later date.



EXHIBIT
C

Thank you for your prompt attention to this request.  If you have any questions or are financially unable to provide this check by this Friday, please contact me directly at (214) 265-2410 to discuss this matter.

Sincerely yours,

Anita Deschner
Claims Manager

AD:ms

Encls.

cc:    Eileen Leeds, Esq.                                    <u>Via Facsimile #: (956) 541-1893</u>
       **WILLETTE & GUERRA LLP**
       3505 Boca Chica Blvd.
       Brownsville, TX 78521



**Professional Claims Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500 • Dallas, Texas 75231

November 8, 2002

*Personal & Confidential*
Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX 78520

*Via CMRRR #: 7118 5603 3960 3551 5026*
*Via Facsimile No.: ~~(678) 781-2450~~*
956 546-2517

| | | |
|---|---|---|
| **Re:** | PCM Claim No.: | 2654 |
| | Insured: | Valley Grande Manor Inc. d/b/a Valley Grande Manor |
| | Claimant: | Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales |

Dear Mr. Martin:

This is in follow-up to our previous letters of September 4, 2002 and September 18, 2002, in which we requested immediate payment of unpaid invoices as well as immediate payment of the agreed settlement of $25,000. Since our September 18, 2002 letter we received additional invoices. Our records now indicate that we have previously invoiced you for $21,112.76 for defense costs and loss adjustment expenses associated with this claim. However, defense counsel has advised us they have received no expense or settlement payments as of November 7, 2002. Therefore, we assume that none of the invoices to the other providers have been paid either.

As you know, this case was settled on August 23, 2002 for all parties for $130,000; $25,000 of which was attributable to Valley Grande Manor's ("VGM") Policy UP00US360002. The appointed Guardian Ad Litem has now approved the settlement and we expect the Court to approve the settlement in the very near future. In order to conclude the settlement and obtain the release, we must fund the settlement in a timely manner.

Your Policy contains a $50,000 deductible which applies to each claim, which applies to both "damages" and "claim expenses". Valley Grande needs to **remit to Ms. Leeds**, payment of **$25,000** so as to comply with the Policy's requirements and allow conclusion of the settlement. Please immediately send your check for the amount owed under your deductible. Your check should be made **payable to *Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales, and as next friend of Guillermo Morales, Jose De Jesus, Jr., Juan Morales and Jonathan Morales, Minor children Eva Alvarez as Next Friend of Diego De Jesus Morales Alvarez, a Minor Child and Felicitas Franco Ramos, Plaintiffs and their attorney Todd C. Feder*** and must be mailed to attorney Eileen Leeds no later than November 22, 2002.

In exchange for this payment, Plaintiff will provide a complete and full release.



EXHIBIT
C

**Professional Cla's Managers, Inc.**
a member company of U.S. Risk Insurance Group, Inc.

Phone: (214) 265-0797
Fax: (214) 265-0368
Toll Free: (800) 557-0797

10210 N. Central Expressway, Suite 500   •   Dallas, Texas 75231

December 3, 2002

***Personal and Confidential***
Richard Martin
Valley Grande Manor, Inc.
901 Wild Rose Lane
Brownsville, TX  78520

***Via Facsimile No.: (678) 781-2450***
***and Via CMRRR: 3960 0000 3510***

| Re: | PCM Claim No.: | 2654 |
|---|---|---|
| | Insured: | Valley Grande Manor Inc. d/b/a Valley Grande Manor |
| | Claimant: | Martha Flores, Individually and on Behalf of the Estate of Jose De Jesus Morales |

Dear Mr. Martin:

Eileen Leeds has forwarded to us a copy of a letter dated December 2, 2002 from the law offices of Kelly, Jeremiah & Feder, who represent Martha Flores in the above-referenced matter.  In that letter, Mr. Feder advises that, unless he receives a check for $25,000 from Valley Grande by the close of business on December, 4, 2002, he will file a breach of contract suit against Valley Grande and file a motion to turn over the settlement agreement.

PCM, on behalf of Underwriters has made several prior written requests that Valley Grande immediately forward its obligation to Ms. Leeds so that she can complete the settlement.  Valley Grande's continued refusal to fund the settlement in a timely manner not only threatens the settlement, but constitutes a breach of the Policy Agreement, and could very well serve to void coverage thereby releasing Underwriters from any further obligation.  In this regard, note the following language:

**SECTION IV - CONDITIONS**

**2.    Reporting of an "Occurrence", offense, "Wrongful Act" or "Claim"**

**c.    You and any other involved "Insured" must:**

**(3) Cooperate with us in the investigation, defense or settlement of  the "Claim"...**

                    *                    *                    *

**11.    Good Faith and Binding Arbitration**

**a.    Good Faith Clause:**



EXHIBIT

C

Both you and we have the same duty to handle "Claims" and other matters under a covenant of good faith and fair dealing between each other. Reasonable settlements considering the probable liabilities and interests of both parties shall be made whether involving your deductible amount or self-insured retention, costs of defense, our limit of liability or any combination thereof.

*   *   *

**14.**  **Payment of deductible**

As a condition precedent to coverage under Insuring Agreements (A), (B) and (C), the "Insured" must pay "Damages" and "Claims Expenses" within the deductible upon demand from us.

Valley Grande's continued refusal to fund the settlement as required constitutes a direct breach of the Policy Conditions cited above. Should Valley Grande not remit the funds by the due date of December 4, 2002, Underwriters will have no choice but to seek a determination and/or adjudication that the breach by Valley Grande of the express Policy Conditions relieves Underwriters of any further obligations related to this matter.

If you have any questions, or desire to discuss this matter further, please contact me.

Sincerely yours,

J. Brian Hobbs
Program Director

JBH:dl

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT | § | |
| LLOYDS, LONDON, | § | |
| Subscribing to Policy No.UP00US360002, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | C.A. No. B-03-081 |
| | § | |
| | § | |
| VALLEY GRANDE MANOR, INC., | § | |
| D/B/A VALLEY GRANDE MANOR, | § | |
| Defendant | § | |

## AFFIDAVIT OF MICHAEL W. MCCOY

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared MICHAEL W. MCCOY, known to me to be the person whose name is subscribed to the foregoing instrument, and after being duly sworn upon his oath, said:

1.  "My name is Michael W. McCoy.  I am capable of making this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  I am an attorney licensed to practice in the State of Texas.

3.  Plaintiffs, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Subscribing to Policy No. UP00US360002 retained me to represent them in this suit against Defendant for breach of contract.

4.  I charged Plaintiffs $12,000.00, based on an hourly fee for my services on this case.  These fees were reasonable and necessary for the services performed.

5.  The fee I charged is one customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the amount in controversy, the time limitations imposed, the results obtained, and the nature and length of my relationship with Plaintiffs."



_____
MICHAEL W. McCOY

SWORN TO AND SUBSCRIBED BEFORE ME by the said Michael W. McCoy on this 26th day of June, 2003, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS



KAYLEEN E. MURPHY
MY COMMISSION EXPIRES
April 22, 2007



EXHIBIT
D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT | § | |
| LLOYDS, LONDON, | § | |
| Subscribing to Policy No.UP00US360002, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | C.A. No. B-03-081 |
| | § | |
| | § | |
| VALLEY GRANDE MANOR, INC., | § | |
| D/B/A VALLEY GRANDE MANOR, | § | |
| Defendant | § | |

**ORDER ON PLAINTIFFS' MOTION FOR FINAL SUMMARY JUDGMENT**

After considering Plaintiffs, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Subscribing to Policy No. UP00US360002's Motion for Final Summary Judgment, the response, and all other evidence on file, the Court

FINDS there is no genuine issue of material fact; therefore, the Court GRANTS Plaintiffs' motion in its entirety.

SIGNED this _____ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

APPROVED AND ENTRY REQUESTED:

**FOWLER, RODRIGUEZ & CHALOS**

By_____
    Michael W. McCoy
    State Bar No. 13471850
    Federal I.D. No. 3801
    Four Houston Center
    1331 Lamar, Suite 1560
    Houston, Texas 77010-3028
    Phone:  (713) 654-1560
    Fax:     (713) 654-7930

ATTORNEYS FOR PLAINTIFFS CERTAIN
UNDERWRITERS AT LLOYDS, LONDON