**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

JUL 1 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT | § | |
| LLOYDS, LONDON, | § | |
| Subscribing to Policy No. UP00US360002, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-081 |
| | § | |
| VALLEY GRANDE MANOR, INC. | § | |
| d/b/a VALLEY GRANDE MANOR, | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)**
**AND FIRST AMENDED ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, VALLEY GRANDE MANOR, INC. d/b/a VALLEY GRANDE MANOR,

Defendant herein, and files this its Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and First

Amended Answer, and in support thereof would respectfully show unto this honorable Court as

follows:

**I.**

**Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1)**

1.01. VALLEY GRANDE MANOR, INC., Defendant herein, is a duly formed corporation

under the laws of the State of Texas which conducts its business operations as a nursing and

convalescence home in Brownsville, Cameron County, Texas. CERTAIN UNDERWRITERS AT

LLOYDS, LONDON, Subscribing to Policy No. UP00US360002, Plaintiffs herein, are foreign

insurers with their principal place of business in London, England, and are subscribers to said

insurance policy.

1.02.  On or about June 10, 2000, Plaintiffs contracted with Defendant to provide Defendant general and professional liability insurance under a certain insurance policy No. UP00US360002 (the "Policy").  See Exhibit A, and by way of reference is incorporated herein for all purposes.

1.03.  On or about February 12, 2003, Plaintiffs initiated this action for alleged breach of contract under the terms of the Policy against Defendant by filing suit in the United States District Court for the Southern District of Texas - Houston Division.  In response thereto, Defendant filed its first Motion to Dismiss, or in the alternative to Transfer Venue, and Original Answer.  Upon agreement, the parties to this action requested from the Houston Division Court that this cause be transferred to the Brownsville Division, which said transfer was ultimately granted.

1.04.  In Plaintiffs' Original Complaint, Plaintiffs alleged actual damages result from the settlement of an underlying lawsuit brought against Defendant (the "Morales Suit", *Estate of Jose De Jesus Morales v. Valley Grande Manor, Inc.,* Cause No. 2001-10-4491-D; In the 103rd Judicial District Court of Cameron County, Texas) in which Plaintiffs provided a defense for Defendant and paid a settlement in the amount of $25,000.00.  Plaintiffs brought this action seeking recovery of the alleged $25,000.00 paid to settle the above stated lawsuit, plus $25,000.00 for alleged attorneys' fees expended in the defense of said suit, plus an additional $30,000.00 in attorneys' fees which Plaintiffs claim will be expended in the prosecution of this instant cause of action.  See Plaintiffs' Original Complaint, and by way of reference is incorporated herein for all purposes.

1.05. Plaintiffs bring this action and plead to the jurisdiction of this Court by alleging jurisdiction is proper under 28 U.S.C. §1332(a)(2) because this action is between a Texas corporation and a citizen of a foreign state, and the amount in controversy exceeds $75,000.00, excluding interest

and costs. See Plaintiffs' Original Complaint, and by way of reference is incorporated herein for all purposes.

1.06. On or about June 30, 2003, Plaintiff filed its Motion for Summary Judgment in this case and plead actual damages in the aggregate amount of only $58,112.76 ($25,000.00 for the settlement of the Morales Suit, $21,112.76 in defense costs associated with the Morales Suit, and $12,000.00 in attorneys' fees associated with this action). See Plaintiffs' Motion for Summary Judgment and the thereto attached affidavits of J. Brian Hobbs ¶ 4 and Michael W. McCoy ¶ 4, and by way of reference is incorporated herein for all purposes.

1.07. By filing the afore referenced motion for summary judgment, Plaintiffs have made judicial admission that the amount in controversy does not exceed the required $75,000.00 necessary for this Court to maintain jurisdiction pursuant to 28 U.S.C. §1332(a)(2).

1.08. Judicial admissions may be found in pleadings or stipulations by the parties or counsel and are binding on the party making the admission. *Martinez v. Bally's Louisiana, Inc.,* 44 F.3d 474, 476 (5th Cir. 2001). "A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it." *Medoza v. Fidelity and Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980); *citing Gevinson v. Manhattan Construction Co. of Oklahoma,* 449 S.W.2d 458, 467 (Tex.1969); McCormick and Ray, Texas Law of Evidence §1127 (2d ed. 1956). Accordingly, by way of Plaintiffs' Motion for Summary Judgment and the affidavit exhibits attached thereto, Defendant is not only relieved of the burden of proving the amount in controversy in this action is less than $75,000.00, but Plaintiffs are completely barred from denying that fact.

WHEREFORE, PREMISES CONSIDERED, Defendant, VALLEY GRANDE MANOR, INC. d/b/a VALLEY GRANDE MANOR, respectfully prays that after hearing held, the Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant further prays that the Court grant Defendant attorneys' fees incurred in the bringing of this motion, as well as any and all further relief to which it may be entitled.

## II.

### First Amended Answer

2.01. Defendant denies each and every, all and singular, the allegations set forth in Plaintiffs' Original Complaint, unless specifically admitted herein.

2.02. Defendant is unable to admit or deny the principal place of business of Plaintiff. However, Defendant does admit that it, along with Plaintiffs, was a subscriber to Insurance Policy No. UP00US36002, as alleged in Paragraph 1 "Parties" in Plaintiffs' Original Complaint.

2.03. Defendant admits that it is a corporation duly formed under the laws of the State of Texas with its principal place of business being in Brownsville, Texas as alleged in Paragraph 1 "Parties" in Plaintiffs' Original Complaint. Defendant further admits that it was served with process in this action through its registered agent, Mr. Dennis M. Sanchez, at 100 North Expressway 83, Brownsville, Texas 78521-2284 by certified mail, return receipt requested as alleged in Paragraph 1 "Parties" in Plaintiffs' Original Complaint.

2.04. Defendant admits that there is diversity between the parties to this action as defined under 28 U.S.C. § 1332(a)(2) as alleged in Paragraph 3 "Jurisdiction" in Plaintiffs' Original Complaint. However, Defendant denies that the amount in controversy exceeds $75,000.00,

excluding interest and costs, as alleged in Paragraph 3 "Jurisdiction" in Plaintiffs' Original Complaint.

2.05. Defendant admits that venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 as alleged in Paragraph 4 "Venue" in Plaintiffs' Original Complaint. However, Defendant denies that venue is proper in the Houston Division of the Southern District of Texas.

2.06. Defendant denies that all conditions precedent have been performed or have occurred as alleged in Paragraph 5 "Conditions Precedent" in Plaintiffs' Original Complaint.

2.07. Defendant admits entering into a contract with Plaintiffs on or about June 10, 2000 to provide Defendant general and professional liability insurance under Policy No. UP00US360002 (the "Policy"), and that a true and correct copy of the policy is attached to Plaintiffs' Original Complaint as alleged in Paragraph 6 "Facts" in Plaintiffs' Original Complaint. Defendant further admits that it owns and operates a nursing and convalescence home in Brownsville, Texas, as alleged in Paragraph 6 "Facts" in Plaintiffs' Original Complaint.

2.08. Defendant admits there was a deductible in the amount of $50,000.00 listed under "Item 4"in the Declarations of the Policy as alleged in Paragraph 7 "Facts" in Plaintiffs' Original Complaint.

2.09. Defendant admits that it was involved in litigation surrounding the treatment and care of Jose De Jesus Morales (the "Morales Suit") as alleged in Paragraph 8 "Facts" in Plaintiffs' Original Complaint. However, Defendant denies being liable for any negligence alleged in the Morales Suit, and specifically denies, authorizing any settlement of the Morales Suit as alleged in Paragraph 8 "Facts" in Plaintiffs' Original Complaint. Defendant further denies liability for the

incurrence of attorneys' fees and expenses associated with its defense in the Morales Suit as alleged in Paragraph 8 "Facts" in Plaintiffs' Original Complaint.

2.10.  Defendant admits to receiving correspondence from Plaintiff relating to the settlement of the Morales Suit as alleged in Paragraph 9 "Facts" in Plaintiffs' Original Complaint.  However, Defendant denies any liability or obligation to pay Plaintiff, or any other individual or entity, as a result of the Morales Suit as alleged in Paragraph 9 "Facts" in Plaintiffs' Original Complaint.

2.11.  Defendant denies the allegations alleged in Paragraph 10 "Damages" in Plaintiffs' Original Complaint.

2.12. Defendant denies the allegations alleged in Paragraph 11 "Attorney Fees" in Plaintiffs' Original Complaint.  Defendant specifically denies that Plaintiffs' attorneys' fees associated with this matter will at least exceed $30,000.00 as alleged in Paragraph 11 "Attorney Fees" in Plaintiffs' Original Complaint.  Further, Defendant specifically denies that $30,000.00 in attorneys' fees associated with this action is "reasonable" as alleged in Paragraph 11 "Attorneys Fees" in Plaintiffs' Original Complaint.

2.13.  Defendant denies the allegations alleged in Paragraph 12 "Prayer" in Plaintiffs' Original Complaint.

### III.

### **Affirmative Defenses**

3.01.  Defendant sets forth the affirmative defense of estoppel.  Pursuant to the insurance contract upon which Plaintiff sues, a duty of good faith in the settlement of a claim is imposed on both parties to this action:

---

"Good Faith Clause:
Both you [Defendant] and we [Plaintiff] have the same duty to handle "Claims" and other matters under a covenant of good faith and fair dealing between each other. Reasonable settlements considering the probable liabilities and interest of <u>both</u> parties shall be made whether involving your deductible amount or self-insured retention costs of defense, our limit of liability or any combination thereof." Emphasis added. See Exhibit A.

3.02.  Plaintiffs breached the Policy by not considering Defendant's interest in the settlement of the Morales Suit, wholly failing to consult with Defendant in authorizing the settlement of the Morales Suit, and completely ignoring Defendant's request to be present during the settlement negotiations of the Morales Suit.

3.03.  As a direct result of Plaintiffs' breach of the contract upon which it sues, Plaintiff is estopped from bringing this action.

3.04.  In the alternative, Defendant sets forth the affirmative defense of breach of contract by Plaintiff, excusing performance by Defendant.

3.05.  As stated above, Plaintiffs had a duty of good faith prescribed under the insurance policy upon which they sue, and Plaintiffs have breached the Policy by settling the Morales Suit without consulting with Defendant.

3.06.  As a direct result of Plaintiffs' breach of the contract upon which it sues, Defendant is discharged and excused from performance under the terms of the contract and cannot be held liable for the damages alleged by Plaintiff.

## IV.

### Attorneys' Fees

4.01.  As a result of Plaintiff bringing this action, Defendant was required to retain counsel and now seeks reimbursement for its reasonable attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Defendant, VALLEY GRANDE MANOR, INC. d/b/a VALLEY GRANDE MANOR, requests that based on the foregone, the Court dismiss this cause of action and order that Plaintiff take nothing, and that Defendant be entitled to recover reasonable attorneys' fees associated with the defense of this action, and that Defendant further be granted any and all relief to which it may be entitled both at law and in equity.

Respectfully submitted,

SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax

By:_____
C. Frank Wood
State Bar No. 24028136
Federal Bar No. 29870
Dennis Sanchez
State Bar No. 17569600
Federal Bar No. 1594
ATTORNEYS FOR DEFENDANT
VALLEY GRANDE MANOR, INC.
d/b/a VALLEY GRANDE MANOR

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and First Amended Answer** has been served upon counsel for the Plaintiff, Mr. Michael W. McCoy and Mr. Geoffrey C. Sansom, FOWLER, RODRIGUEZ & CHALOS, 4 Houston Center, 1331 Lamar, Suite 1560, Houston, Texas 77010-3028, ☑ by placing a true and correct copy of same in the United States Mail, certified, return receipt requested, with postage fully prepaid, and/or ☒ by facsimile to the following number: (713) 654-7930, and/or ☐ by hand delivery, on this 18th day of ＿＿＿July＿＿＿, 2003.

C. Frank Wood

## CERTIFICATE OF CONFERENCE

I hereby certify that the undersigned attorney has conferred with the following counsel of record in this action regarding the foregone **Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and First Amended Answer** on the 18th day of ＿＿＿July＿＿＿, 2003, and they are opposed to said pleading: Mr. Michael W. McCoy and/or Mr. Geoffrey C. Sansom, FOWLER, RODRIGUEZ & CHALOS, 4 Houston Center, 1331 Lamar, Suite 1560, Houston, Texas 77010-3028.

C. Frank Wood

## VERIFICATION

THE STATE OF TEXAS     §
                                 §
COUNTY OF CAMERON    §

BEFORE ME, the undersigned authority, on this day personally appeared C. FRANK

WOOD, who being by me first duly sworn on oath, stated and said that he is duly qualified and

authorized in all respects to make this Affidavit; and that he has read the foregoing **Motion to**

**Dismiss and First Amended Answer,** and that the contents thereof are true and correct.

                                                  C. FRANK WOOD

SWORN TO AND SUBSCRIBED TO BEFORE ME, a Notary Public, on the _18th_ day of

_July_, 2003.

                                        Notary Public, State of Texas

My Commission expires:

U.S. RISK, INC.
10__ N. Central Expressway  Suite _00
Dallas, Texas 75231

In consideration of the stipulations and premium shown, Underwriters do hereby bind themselves, each for his own part and not one for the other as follows  IN FAVOR OF THE INSURED whose name and address is shown, for the limits or amount specified hereon, and for the term insured, according to the following

| This Declaration Page is attached to and forms part of certificate provisions | (Form SLC-3 USA). |
|---|---|

| Previous No. | Authority Ref. No.   UP00US 36 | Certificate No.   UP00US360002 |
|---|---|---|

Name and Address of Insured:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX  78520

| Effective from     June 10, 2000 | to | June 10, 2001 |
|---|---|---|

both days at 12:01 a.m. local standard time

| Insurance is effective with certain Underwriters at Lloyd's, London  (See Security) | Percentage     –     100% |
|---|---|

| Amount | Coverage | Annual Premium |
|---|---|---|
| See Coverage Part Declarations | Professional, General Liability | $135,000.00 |
|  | Employee Benefit Liability | $  2,500.00   Inspection Fee |
|  |  | $  6,668.75   State Tax |
|  |  | $     343.75   Stamping Fee |
|  |  | $144,512.50   Total |

Bed Rate: $750.00

Operations:  Nursing Facility

Special Conditions:
The following forms apply to this Certificate: FORMS ATTACHED -

HC 001; HC SYN; HC 200; HC 201; HC 202; HC 203; HC401

Service of Suit may be made upon:
          Mssrs. Mendes and Mount
          750 Seventh Avenue
          New York, NY  10019-6829

| Issued at | Dallas, Texas |
|---|---|
|  | daj |

Date:  December 6, 2000

It is expressly understood and agreed by the Insured by accepting this instrument that U.S. Risk, Inc. is not an Insurer hereunder and shall not be liable in any way nor to any extent whatsoever for any loss or claim.

Servicing Agent:

Craven/Warren & Co
P.O. Box 41328
Houston, TX  77241-1328

**EXHIBIT**

**A**

U. S. RISK UNDERWRITERS, INC.

BY: RANDALL G. GOSS, CHAIRMAN/CEO
          Correspondent

61

COVERAGE PART DECLARATIONS

Certificate No. UP00US360002

In consideration of and in accordance with the policy wording HC 001, the Declaration Page Form SLC-3 USA is completed as follows:

Item 3:  Limits of Insurance:

A.  Each Occurrence Limit (Insuring Agreements A and B):          $1,000,000

B.  Each Claim Limit (Insuring Agreement C):                      $ EXCLUDED

C.  General Aggregate Limit (Other than Products-
             Completed Operations):                              $2,000,000

D.  Products-Completed Operations Aggregate Limit:               $ INCLUDED IN GENERAL AGGREGATE

E.  Employee Benefits Liability Aggregate Limit:                 $ EXCLUDED

F.  Fire Damage Limit:                                           $50,000


Item 4:
Deductibles:              Insuring Agreements A and B:            $50,000
                          Insuring Agreement C                   $ NOT APPLICABLE

Item 6:
Retroactive Date: NOT APPLICABLE

Item 7: Underwriters Representative:

U. S. Risk Underwriters, Inc.
10210 N. Central Expressway, Suite 500
Dallas, TX  75231


THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURE AND THE POLICY PERIOD.

SCHEDULE OF UNDERWRITERS

Certificate No: UP00US360002

This insurance contract includes this Schedule, the application presented by the "Insured", declarations and certificate, and all other endorsements, provisions, terms and conditions attached hereto and made a part hereof:

Underwriters at Lloyd's, London

| Underwriter Name | | | Participation |
|---|---|---|---|
| Syndicate | #1900 | NEW | 14.03% |
| | #2488 | AGM | 14.03% |
| | #376 | AGY | 10.53% |
| | #1047 | RGW | 10.53% |
| | #205 | HGJ | 10.53% |
| | #2027 | COX | 10.53% |
| | #1688 | HIH | 7.02% |
| | #861 | MDR | 3.16% |
| | #1209 | MEB | 3.86% |
| | #1411 | SUT | 5.26% |
| | #991 | AEG | 3.50% |
| | #1212 | SJ | 7.02% |

For and on behalf of Underwriters
U.S. Risk Underwriters, Inc.

By: _____    61
RANDALL G. GOSS, CHAIRMAN CEO
(Authorized Representative)

HC SYN
Ed 0600

# IMPORTANT NOTICE

# AVISO IMPORTANTE

1   To obtain information or make a complaint:

Para obtener informacion o para someter una queja:

2   You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

Puede comunicarse con el Departamento de Suguros de Texas para obtener informacion acerca de companieas, coberturas, derechos o que jasal:

     1-800-252-3439

     1-800-252-3439

3   You may write the Texas Department of Insurance:

Puede escribir al Departmento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
FAX #(512)475-1771

P.O. Box 149104
Austin, TX 78714-9104
FAX #(512)475-1771

4   PREMIUM OR CLAIM DISPUTES:

DISPUTAS SOBRE PRIMAS O RECLAMOS:

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

Si tiene una disputa concemiente a su prima o a reclamo, debe comunicarse con el agente primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

5   ATTACH THIS NOTICE TO YOUR POLICY:

UNA ESTE AVISO A SU POLIZA:

This notice is for information only and does not become a part of condition of the attached document.

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

GUARANTY FUND NONPARTICIPATION NOTICE

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A SURPLUS LINES COVERAGE PURSUANT TO THE TEXAS INSURANCE STATUTES. THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE AND THIS INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER ARTICLE 21.28-C., INSURANCE CODE.  ARTICLE 1.14-2 INSURANCE CODE, REQUIRES PAYMENT OF 4.85 PERCENT TAX ON GROSS PREMIUM.

## SPECIFIED LOCATION ENDORSEMENT

It is agreed the insurance provided by this policy does not apply to any "Claim" for liability arising out of any operations of the "insured" other than those operations as specified, described and located below:

Healthcare Facility:

Valley Grande Manor
901 Wild Rose Lane
Brownsville, TX 78520

It is further understood and agreed that if the "Insured" purchases, organizes or otherwise acquires any healthcare facilities, other than as shown above, the "Insured" must, within 30 days furnish full information including completed, signed and dated application to "Underwriters". "Underwriters" will determine the acceptability of the newly purchased, organized or acquired facility(s) and whether or not to add such location for coverage hereunder. If acceptable to "Underwriters", a premium charge will be determined and will be due and payable within 30 days thereafter.

HC 200
Ed. 0600                                    1

Neither Insuring Agreements (A); (B); nor (C) will apply to occurrences or wrongful acts which occurred prior to the purchase, organization or acquisition of the new healthcare facility(s). All other terms and conditions of this policy would apply unless endorsed otherwise.

Attached to and forming part of No. UP00US360002 of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U.S. Risk Underwriters, Inc.

61

RANDALL C. GOSS, CHAIRMAN/CEL
(Authorized Representative)

HC 200
Ed. 0600

2

(4/24/86)

E OF SUIT CLAUSE (U.S.A.)

Underwriters hereon to pay any amount claimed to be due hereunder, the
d (or Reinsured), will submit to the jurisdiction of a Court of competent
his Clause constitutes or should be understood to constitute a waiver of
Court of competent jurisdiction in the United States, to remove an action to a
a case to another Court as permitted by the laws of the United States or of
at service of process in such suit may be made upon

MENDES & MOUNT
50 SEVENTH AVENUE
Y YORK, NY  10019-6829

m upon this contract, Underwriters will abide by the final decision of such
al.

pt service of process on behalf of Underwriters in any such suit and/or
a written undertaking to the Insured (or Reinsured) that they will enter a
nt such a suit shall be instituted.

ory or district of the United States which makes provision therefor,
dent, Commissioner or Director of Insurance or other officer specified for
ors in office, as their true and lawful attorney upon whom may be served
instituted by or on behalf of the Insured (or Reinsured) or any beneficiary
r reinsurance), and hereby designate the above-named as the person to
or a true copy thereof.

Underwriters hereon.

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

6

By RANDALL G. GOSS, CHAIRMAN/CEO

(Authorized Representative)

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-PHYSICAL DAMAGE-DIRECT N.M.A.1191

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*Note - If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BOARD) N.M.A.1256

This Policy*                                                      does not apply:

I.      Under any liability Coverage, to injury, sickness, disease, death or destruction

      (a)     with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (b)     resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

      (a)     the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured (2) has been discharged or dispersed therefrom;

      (b)     the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (c)     the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services materials, parts or equipment in connection with the planning, construction, maintenance, operation use of any nuclear facility, but if such facility is located within the United States of America, territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction property at such nuclear facility.

IV.     As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the

operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "**nuclear facility**" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:  As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

Other items and conditions remaining unchanged.

Attached to and forming part of Policy No. UP00US360002    of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

61

RANDALL G. GOSS  CHAIRMAN/CEO

(Authorized Representative)

HC 202
Ed 0600                                        Page 2 of 2

## MINIMUM EARNED PREMIUM ENDORSEMENT

The minimum earned premium for this policy, regardless of term, will be 25% of the annual deposit premium, plus any applicable fees which are fully earned.

Attached to and forming part of No.  UP00US360002          of Underwriters hereon.

Effective: June 10, 2000

Insured: Valley Grande Manor

HC 203
Ed 0600

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

RANDALL  GOSS  CHAIRMAN/CEO
(Authorized Representative)

AMENDATORY ENDORSEMENT

It is understood and agreed that SECTION I – COVERAGES (C) Employee Benefit Liability Insurance,  Page 1 of 20 of the policy Conditions is deleted.

Attached to and forming part of No. UF00UC360002  of Underwriters hereon.

Effective:  June 10, 2000

Insured:  Valley Grande Manor

On behalf of Underwriters
U. S. Risk Underwriters, Inc.

                                                          61
BY RANDALL G. GOSS  CHAIRMAN/CEO
   (Authorized Representative)

HC 401
Ed 0600

# Health Care Facilities

Professional, General and Employee Benefit Liability
Policy
Occurrence Form

# Health Care Facilities
## Professional, General and Employee Benefit Liability Policy

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. COVERAGE UNDER INSURING AGREEMENT (C) EMPLOYEE BENEFIT LIABILITY IS PROVIDED ON A CLAIMS MADE BASIS. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

Throughout this Policy, the words "you" and "your" refer to the "Insured" shown in the Declarations, and any other person or organization qualifying as an "Insured" under SECTION II - WHO IS AN INSURED of this Policy. The words "we", "us" and "our" refer to the "Underwriters" providing this insurance. Other words and phrases that appear in quotation marks also have special meaning. Please refer to SECTION V - DEFINITIONS.

In consideration of the payment of the premium, in reliance upon the statements made and information provided in the Application, which is deemed attached hereto and incorporated in this Policy, and subject to all of the terms, conditions and limitations of this Policy and endorsements thereto, "Underwriters" agree with the "Insured" as follows:

## SECTION I - COVERAGES

1.    Insuring Agreements

    (A)    Professional Liability Insurance:

        We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Occurrence" caused by a "Medical Incident;" provided that such "Medical Incident" first occurs in the "Coverage Territory" and during the "Policy Period."

    (B)    Commercial General Liability Insurance:

        We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Bodily Injury" or "Property Damage" caused by an "Occurrence" or arising from "Personal Injury" or "Advertising Injury" caused by an offense; provided that the "Occurrence" or offense first takes place in the "Coverage Territory" and during the "Policy Period."

    (C)    Employee Benefit Liability Insurance:

        We will pay those sums in excess of the deductible amount specified in Item 4 of the Declarations which the "Insured" becomes legally obligated to pay as "Damages" as a result of any "Claim" made against the "Insured" by any "Employee," former "Employee," or "Employee's" beneficiaries or legal representatives injury caused by a "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Program," provided that the "Wrongful Act" first takes place in the "Coverage Territory" and subsequent to the "Retroactive Date" specified in Item 6 of the Declarations; provided the "Claim" is first made against the "Insured during the "Policy Period" and is reported in writing to us during the "Policy Period."

2.   Claim Expenses

We will have the right and duty to defend the "Insured" against any "Claim" that is covered by Insuring Agreements (A), (B) or (C). However, we will have no duty to defend the "Insured" against any "Claim" to which this insurance does not apply. We may, at our discretion, investigate and settle any "Occurrence" or "Claim." The total amount we will pay for "Damages" and "Claims Expenses" is limited, as described in SECTION III - LIMITS OF INSURANCE. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of "Damages" and/or "Claims Expenses."

3.   Exclusions

(A)   Exclusions Applicable to Insuring Agreement (A):

In addition to the General Exclusions listed under (D) below, Insuring Agreement (A) does not apply to any "Occurrence" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.   Any "Medical Incident" committed while the professional license or registration to operate the "Insured" facility was suspended, revoked, surrendered, or otherwise terminated.

2.   Any "Medical Incident" committed while the "Insured's" professional license to dispense controlled substances was suspended, revoked, surrendered, or otherwise terminated.

3.   Any "Property Damage."

4.   Any "Personal Injury" or "Advertising Injury," except to the extent that such "Injury" relates to a "Medical Incident."

5.   Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

6.   Services performed by a licensed medical professional, including, but not limited to a physician, surgeon, dentist, chiropractor, podiatrist, osteopath, nurse midwife or nurse anesthetist; but this exclusion shall not apply to services performed by an "Employee" of the "Insured," or services performed solely as a medical director.

7.   Disputes about your fees or charges, including collection of fees from third parties.

8.   Any act as a member of a formal accreditation or professional review or licensing board or any similar board or committee.

(B)   Exclusions Applicable to Insuring Agreement (B):

In addition to the General Exclusions listed under (D) below, Insuring Agreement (B) does not apply to an "Occurrence " or offense based upon, arising out of, directly or indirectly relating to or in any way involving:

1.   A "Medical Incident."

2.   Any "Wrongful Act" in the "Administration" of the Insured's Employee Benefit Programs."

3.  "Property Damage" to:

   (1)    Property you own, rent or occupy;

   (2)    Premises you sell, give away or abandon, if the "Property Damage" arises out of any part of those premises;

   (3)    Property loaned to you;

   (4)    Personal property in the care, custody or control of the "Insured;"

   (5)    That particular part of the real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "Property Damage" arises out of those operations; or

   (6)    That particular part of any property that must be restored, repaired or replaced because "Your Work" was incorrectly performed on it.

   Paragraph (2) of this exclusion does not apply if the premises are "Your Work" and were never occupied, rented or held for rental by you.

   Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

   Paragraph (6) of this exclusion does not apply to "Property Damage" included in the "Products-Completed Operations Hazard."

4.  "Property Damage" to "Your Product" arising out of it or any part of it.

5.  "Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

6.  "Property Damage" to "Impaired Property" or property that has not been physically injured arising out of:

   (1)    A defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

   (2)    A delay, or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

7   Any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your Product";

(2)    "Your Work"; or

(3)    "Impaired Property";

if such a product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

These exclusions do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

8.    "Personal Injury" or "Advertising Injury":

(1)    Arising out of oral or written publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

(2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the "Policy Period";

(3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "insured";

9.    "Advertising Injury" arising out of:

(1)    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)    The failure of goods, products, or services to conform with advertised quality or performance;

(3)    The wrong description of the price of goods, products or services; or

(4)    An offense committed by an "insured" whose business is advertising, broadcasting, publishing or telecasting.

(C)    Exclusions Applicable to Insuring Agreement (C):

In addition to the General Exclusions listed under (D) below, Insuring Agreement (C) does not apply to any "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1    A "Medical Incident."

2.    "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury."

3.    Libel, slander, discrimination or humiliation.

4.   Any claim for failure of performance of contract by any "Insured", including failure or insolvency of any "Employee Benefit Program."

5.   Any claim based upon the "Insured's" failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, or any similar law.

6.   Any claim based upon the:

   a.   failure of stock to perform as represented by an "Insured";

   b.   advice given by an "Insured" to an "Employee" to participate or not to participate in stock subscription plans; or

   c.   investment or non-investment of funds or the income yield therefrom.


(D)   Exclusions Applicable to ALL INSURING AGREEMENTS:

This Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for any "Occurrence", offense or "Claim" based upon, arising out of, directly or indirectly relating to or in any way involving:

1.   "Bodily Injury" to:

   (1)   An "Employee" of the "Insured" arising out of and in the course of:

      (a)   Employment by the "Insured"; or

      (b)   Performing duties related to the conduct of the "Insured's" business; or

   (2)   The spouse, child, parent, brother or sister of that "Employee" as a consequence of the events described in paragraph (1) above.

   This exclusion applies whether the "Insured" may be liable as an employer or in any other capacity and t any obligation to share "Damages" with or repay someone else who must pay "Damages" because of th "Injury."

   This exclusion does not apply to "Claims" under Insuring Agreement B involving liability assumed by th "Insured" under an "Insured Contract."

2.   Any "Event", offense or "Medical Incident" committed prior to the effective date of this Policy if:

   (a)   such "Claim" was the subject of a notice under any prior insurance policy or any prior or pendi litigation; or

   (b)   at the effective date of this Policy you knew or could have reasonably foreseen that such "Eve offense or "Medical Incident" might reasonably be expected to be the basis of a "Claim."

3.  Any "Injury", "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" expected or intended from the standpoint of the "Insured;"

4.  The "insured's" activities and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; provided that this Exclusion (D)(4) shall not apply to Insuring Agreement (C).

5.  The "Insured's" employment practices of any kind, including but not limited to, (a) refusal to employ; (b) termination of employment; (c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination; (d) consequential "Bodily injury" or "Personal injury" as a result of any such employment practice;

6.  Alleged or real acts of discrimination by any "Insured" based on age, health, sex, sexual preference, disability, race, country of origin or religion;

7.  Express warranties or guarantees made by any "Insured;"

8.  Any "Injury", "Bodily Injury" or "Property Damage" caused by any "Insured" while under the influence of intoxicants or narcotics;

9.  The real or alleged use or misuse of funds, grants or appropriations or for the return of such funds, grants or appropriations for any reason;

10. Any actual or alleged failure, malfunction or inadequacy of electronic data processing equipment or media. This exclusion does not apply to a "Claim" arising out of the dispensing of drugs, life monitoring or elopement.

11. "Bodily Injury," humiliation or emotional distress to any person arising out of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS);

12. "Bodily Injury" to any person arising out of exposure to lead.

13. Any "Bodily Injury" or "Property Damage" caused by or involving medical waste. Medical waste means isolation wastes, infectious agents, human blood and blood products, pathological wastes, sharps, body parts, contaminated bedding, surgical wastes, contaminated laboratory wastes and dialysis wastes.

14. The existence of asbestos, or to any liability for any loss including, but not limited to, property damage, loss of use, loss of income, cost of inspection, cost of removal, cost of disposal, cost of repair or replacement "Bodily Injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time arising out of the manufacture of, mining of, use of, sale of, installation of, distribution of removal of, encapsulation of, presence of, or exposure to asbestos, or to any obligation on your part indemnify any party because of "Damages" arising out of such loss, damage, or injury, at any time as result of the manufacture of, mining of, use of, sale of, installation of, distribution of, removal of encapsulation of or exposure to asbestos.

15. A criminal act or fraud or dishonesty committed by any "Insured."

16.    Liability under any contract or agreement. This exclusion does not apply to liability for "Damages" that you would have in the absence of a contract or agreement or, under insuring Agreement B, for liability assumed in an "Insured Contract."

17.    Any obligation you have under any workers compensation, disability benefits or unemployment compensation law or any similar law.

18.    The ownership, maintenance, use or entrustment of any aircraft, "Auto" or watercraft owned or operated by or for the benefit or rented or loaned to any "Insured." Use includes operation and "Loading or Unloading."

19.    "Bodily Injury" or "Property Damage" for which any "Insured" may be held liable by reason of:

    (1)    Causing or contributing to the intoxication of any person;

    (2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

20    Pollution

    (1)    "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge dispersal, seepage, migration, release or escape of pollutants:

        (a)    At or from any premises, site or location, which is or was at any time owned or occupied by, rented or leased to, any "Insured;"

        (b)    At or from any premises, site or location which is or was at any time used by or for an "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

        (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

        (d)    At or from any premises, site or location on which any "Insured" or any contractors subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

            (1)    If the pollutants are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

            (2)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(1) does not apply to "Bodily Injury" or "Property Damage" arising out of the escape fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed

released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "Insured", contractor or subcontractor.

Subparagraphs (a) and (d)(1) do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    (2)    Any loss, cost or expense arising out of any:

            (a)    Request, demand or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

            (b) .    "Claim" by or on behalf of a governmental authority for "Damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes; acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

21.    Sexual misconduct, including

    (a)    Any welcome or unwelcome conduct, physical acts, gestures or spoken or written words of a sexual nature, including without limitation, sexual intimacy (even if consensual), sexual molestation, sexual assault, sexual battery, sexual abuse, sexual harassment, sexual exploitation or any sexual act; and

    (b)    The negligent employment, investigation, supervision, hiring, training, retention, or report or failure to report to proper authorities of a person for whom any "Insured" is or ever was responsible and whose conduct would be excluded in (a) above.

Also, this Policy shall not provide any coverage under Insuring Agreements (A), (B) or (C) for the following:

22.    That part of an award or settlement payment that constitutes punitive, exemplary or multiple damages, fines penalties or taxes.

23.    Any "Claim" seeking relief or redress in any form other than money "Damages";

24.    Any "Claim" brought by or on behalf of any "Insured", or by any other corporation owned by any "insured"

25.    Any "Claim" brought by, or on behalf of, any local, state or federal regulatory agency or other governmen entity, including, but not limited to, health care fraud and abuse proceedings.

## SECTION II · WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are "Insureds", but only with respect to the conduct of a business of which you are a sole owner.

    b.  A partnership or joint venture, you are an "Insured." Your members, your partners and their spouses are also "Insureds", but only with respect to the conduct of your business.

    c.  A limited liability company, you are an "Insured." Your members are also "Insureds", but only with respect to the conduct of your business. Your managers are "Insureds", but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an "Insured." Your "Executive Officers" and directors are "Insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "Insureds" but only with respect to their liability as stockholders.

2   Each of the following are also "Insureds":

    Your "Employees" other than either your "Executive Officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture or corporation that is not shown as a Named "Insured" in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.  The Limit of Insurance shown in Item 3A of the Declarations for each "Occurrence" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Occurrence" under Insuring Agreements (A) or (B) regardless of the number of:

    a.  "Insureds"; or

    b.  Persons or organizations making "Claims."

2.  All "Claims" arising from continuous or related "Medical Incidents" to one person shall be treated as one "Occurrence" under Insuring Agreement (A). All such "Medical Incidents" shall be considered to have taken place when the earliest such "Medical Incident" first takes place.

3.  The General Aggregate Limit shown in Item 3C of the Declarations is the most we will pay for the sum of "Damages" and "Claims Expenses" under Insuring Agreements (A) and (B).

4.  The Products-Completed Operations Aggregate Limit shown in Item 3D of the Declarations is the most we will pay for all "Damages" under Insuring Agreement (B) because of "Bodily Injury" and "Property Damage" included in the "Products-Completed Operations Hazard."

5.  The Fire Damage Limit set forth in Item 3F of the Declarations is the most we will pay under Insuring Agreement (B) for "Damages" because of "Property Damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6.  The Limit of Insurance shown in Item 3B of the Declarations for each "Claim" is the most we will pay for the sum of all "Damages" and "Claims Expenses" incurred in connection with any "Claim" under Insuring Agreement (C) regardless of the number of:

    a.  "Insureds"; or

    b.  Persons or organizations making "Claims."

7.  The Employee Benefit Aggregate Limit set forth in Item 3E of the Declarations is the most we will pay for the sum of all "Damages" and "Claims Expenses" under Insuring Agreement (C).

8.  The deductible amount stated in Item 4 of the Declarations applies to each "occurrence" under Insuring Agreements (A) and (B) and to each "Claim" under Insuring Agreement (C). The deductible shall include "Damages" and "Claims Expenses" and shall be paid by the "Insured" upon demand from us. The deductible reduces the available "Limit of Insurance" as stated in Items 3 A and 3 B of the Declarations.

"Claims" which may be subject to coverage under Insuring Agreements (A), (B) and/or (C) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, are limited to a total of one per occurrence or per claim limit of liability provided under this Policy.


# SECTION IV - CONDITIONS

1.  Bankruptcy

    Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Policy.

2.  Reporting of an "Occurrence", offense, "Wrongful Act" or "Claim"

    a.  You must see to it that we are notified as soon as practicable of an "Occurrence", an offense or a "Wrongful Act" which may result in a "Claim." To the extent possible, notice should include:

        (1)  Specific circumstances surrounding the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" of the Insured's "Employee Benefit Programs";

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any "Injury" or damage arising out of the "Medical Incident", "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or "Wrongful Act" in the "Administration" or the Insured's "Employee Benefit Programs."

HC 001 00
Ed 0600

b.   If a "Claim" is made against any "Insured", you must:

    (1)   Immediately record the specifics of the "Claim" and the date received; and

    (2)   Notify us as soon as practicable, but in no event later than 30 days after the end of the "Policy Period."

       Notice is to be given to the party identified in Item 7 of the Declarations.

c.   You and any other involved "Insured" must:

    (1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "Claim;"

    (2)   Authorize us to obtain records and other information;

    (3)   Cooperate with us in the investigation, defense or settlement of the "Claim" including:

       (a)   upon request, submit to examination and interrogation under oath by our representative,

       (b)   attend hearings, depositions and trials as requested by us,

       (c)   assist in securing and giving evidence and obtaining the attendance of witnesses,

       (d)   provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us

    (4)   Obtain our consent prior to the settlement of any "Claim"; and

    (5)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

d.   No "Insured" will, except at the "Insured's" own cost, voluntarily make a payment, assume any obligation, o incur any expense, other than for first aid, without our consent.

3.   Other Insurance

If other valid and collectible insurance is available to the "insured" for any "Claim" we cover under Insurir Agreements (A), (B) or (C), our obligations are limited as follows:

a.   Primary Insurance

    This insurance is primary except when b. below applies. If this insurance is primary, our obligations are r affected unless any of the other insurance is also primary. Then, we will share with all that other insuran by the method described in c. below.

b.   Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.   When this insurance is excess over other insurance, we will have no duty under Insuring Agreements (A), (B) or (C) to defend the "Insured" against any "Claim" if any other insurer has the duty to defend the "Insured" against that "Claim."   If no other insurer defends, we may undertake to do so, at our discretion, but we will be entitled to the "Insured's" right against all those other insurers.

When this insurance is excess over any other insurance, we will pay, up to the applicable limits of this insurance, the amount of the "Claim" that exceeds the sum of the total amount that all such other insurance would pay for the "Claim" in the absence of this insurance.
If other insurance is also excess, we will share the remaining amount of the "Claim" with that other insurance.

c.   Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "Claim" amount   remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

4.   When Your Business Changes

The first Named "Insured" must notify us of any change which might affect the terms of this insurance.

5.   Transfer Of Rights Of Recovery Against Others To Us

If the "Insured" has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair them. At our request, the "Insured" will bring suit or transfer those rights to us and help us enforce them.

6.   When We Do Not Renew

If we decide not to renew this Policy, we will mail or deliver to the first Named "Insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

7.   Cancellation

1.   The first Named "Insured" shown in the Declarations may cancel this Policy by mailing or delivering to advance written notice of cancellation.

2.   We may cancel this Policy by mailing or delivering to the first Named "Insured" written notice of cancellation at least:

    a.    10 days before the effective date of cancellation if we cancel for non-payment of premium; or

    b.    30 days before the effective date of cancellation if we cancel for any other reason.

3.    We will mail or deliver our notice to the first Named "Insured's" last mailing address known to us.

4.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.    If this Policy is canceled, we will send the first Named "Insured" any premium refund due. If we cancel, the refund will be pro rata. If the first Named "Insured" cancels, the refund will be calculated as per the attached Short Rate Cancellation Scale. The cancellation will be effective even if we have not made or offered a refund.

6.    If notice is mailed, proof of mailing will be sufficient proof of notice.

8.    **Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named "Insured" shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

9.    **Premiums**

The first Named "Insured" shown in the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

10.    **Inspection and Audit**

We will compute all premiums for this coverage in accordance with our rules and rates.

"Underwriters" shall be permitted but not obligated to inspect the "Insured's" premises and operations as they relate to this policy, at any time during the "Policy Period" and up to five years afterward.

Any premium shown on this policy is an advance premium and may be a deposit premium only. "Underwriters" have the option, if they so chose, at the expiration of this policy period, to investigate and audit based on a per bed rate per the policy "Declarations" page. Additional premium will be calculated based on the rules and rates in effect at the inception date of this policy. Audit premiums are due and payable upon notice to the "Insured".

11.    **Good Faith and Binding Arbitration**

a.    Good Faith Clause:

Both you and we have the same duty to handle "Claims" and other matters under a covenant of good faith and fair dealing between each other. Reasonable settlements considering the probable liabilities and interests of both parties shall be made whether involving your deductible amount or self-insured retention costs of defense, our limit of liability or any combination thereof.

b.    Binding Arbitration Clause:

HC 001 OC
Ed 060

Page 13 of 2

(1)  Both you and we agree that in the event of any difference arising between us with reference to this Policy, such difference will be referred to three disinterested arbitrators, one being chosen by you, one chosen by us and the third chosen by the two aforesaid arbitrators before they enter into arbitration.

(2)  In case the first two arbitrators so chosen do not agree as to the third arbitrator within four weeks after both shall have accepted service, the third arbitrator shall be chosen by a court of record in the County in which the arbitration is pending.

(3)  Such arbitration shall take place in a County in the continental United States, chosen by us at our sole discretion. The expense of the arbitration shall be borne and paid as directed by the arbitrators.

(4)  In default of any party hereto qualifying its arbitrator within four weeks after receipt of written notice from the other party, requesting party may name both arbitrators and they shall proceed in all respects as stipulated herein.

(5)  The arbitrators may abstain from judicial formality and from following strictly the rules of law at their sole option.

(6)  Each party shall submit its case to the Court of Arbitration within four weeks of the close of the choice of the arbitrators.

(7)  The decision of the majority of arbitrators shall be final and binding on both parties.

12.  Insured's Warranty of Application and Loss Information

You, through your insurance brokers, have provided information to us which has induced us to issue this insurance Policy. Included in the information provided is an application and other correspondence including your "Claim" or loss history. This information is considered to be a part of this Policy.

You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to issue this Policy.

You, for all "Insureds" under the Policy, do warrant the truth of such information AT THE EFFECTIVE DATE OF THIS POLICY. You declare that you know of no incident, "Event", offense, circumstance or "Claim" which has taken place or become known prior to the effective date of this Policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the application or the information which was provided.

You understand that if such information is false or misleading, it may limit or avoid coverage under the Policy.

13.  Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case death of an individual Named "Insured."

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

14.    Payment of deductible

As a condition precedent to coverage under Insuring Agreements (A), (B) and (C), the "Insured" must pay "Damages" and "Claims Expenses" within the deductible upon demand from us.

## SECTION V - DEFINITIONS

1.    "Administration" means

    a.    Giving counsel to "Employees" with respect to the "Employee Benefit Programs";

    b.    Interpreting the "Employee Benefit Programs";

    c.    The handling of records in connection with the "Employee Benefit Programs; and

    d.    Effecting enrollment, termination or cancellation of "Employees" under the "Employee Benefit Programs" provided all such acts are authorized by you, but "Administration" does not mean:

        1.    The exercise of or failure to exercise any authority or control respecting:

            (a)    The management of any "Employee Benefit Programs"; or

            (b)    The investment or disposition of any "Employee Benefit Program"; or

        2.    The rendering of any advice with respect to the investment of any assets of any "Employee Bene Program."

2.    "Advertising Injury" means injury arising out of one or more of the following offenses:

    a.    Oral or written publication of material that slanders or libels a person or organization or disparages person's or organization's goods, products, or services;

    b    Oral or written publication of material that violates a person's right of privacy;

    c.    Misappropriation of advertising ideas or style of doing business; or

    d.    Infringement of copyright, title or slogan.

3.    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attac machinery or equipment. But "Auto" does not include mobile equipment.

4.     "Bodily Injury" means "Bodily Injury", sickness or disease sustained by a person, including death resulting from any of these at any time; mental injury and mental anguish..

5.     "Claim/s" means an oral or written demand against an "insured" for "Damages."

6.     "Claim Expenses" means all reasonable and necessary fees, costs and expenses incurred in connection with the investigation, adjustment, defense, and appeal of a "Claim." "Claim expenses" do not include the salaries of the "Insured" or its employees.

7.     "Coverage territory" means:

   a.     The United States of America (including its territories and possessions), Puerto Rico and Canada; and

   b.     All parts of the world if your responsibility to pay "Damages" is determined in a suit on the merits in the territory described in Paragraph a. above or in a settlement we agree to.

8.     "Damages" means compensation, in money, which the "Insured" shall be obligated to pay by reason of judgment or settlement for liability to which this insurance applies provided, however, that "Damages" will not include:

   a.     any fines, penalties, taxes, punitive, exemplary or multiplied damages; or

   b.     any matters that may be deemed uninsurable under the law pursuant to which this Policy will be construed; or

   c.     any non-monetary relief or any restitution.

9.     "Employee" means a person on the "Insured's" regular payroll, with Federal and, if applicable, State taxes withheld, whose work is directed or controlled by the "Insured", including part-time and seasonal "Employees" and "Leased Workers." "Employee" does not include a "Temporary Worker".

10.    "Employee Benefit Programs" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security, disability insurance and death benefits insurance.

11.    "Event" means an accident, or continuous, intermittent or repeated exposure to substantially the same harmful conditions.

12.    "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by laws or any other similar governing document.

13.    "Impaired Property" means tangible property, other than "Your Product" or "Your Work", that cannot be used or is less useful because:

   a.     It incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b      You have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by:

a.    The repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

b.    Your fulfilling the terms of the contract or agreement.

14    "Injury" means "Bodily Injury", sickness, disease, mental injury, mental anguish, shock, disability, including injury arising from a continuous or repeated exposure to substantially the same harmful conditions, to one person.

15    "Insured" means "you" and those persons or organizations qualifying as "Insureds" under Section II – Who Is An Insured.

16.    **"Insured Contract" means:**

a.    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured Contract";

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    An obligation as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

e.    An elevator maintenance agreement;

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)    That indemnifies a railroad for "Bodily Injury" or "Property Damage" arising out of construction demolition operations, within 50 feet of any railroad property and affecting any railroad bridge trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)    Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the "Injury" or "Damage"; or

(3)    Under which the "Insured", if an architect, engineer, or surveyor, assumes liability for an "Injury" "Damage" arising out of the "Insured's" rendering or failure to render professional servic

including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

17.   "Leased Worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

18.   "Loading or Unloading" means the handling of property:

a.    after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "Auto";

b.    while it is in or on an aircraft, watercraft or "Auto"; or

c.    while it is being moved from an aircraft, watercraft or "Auto" to the place where it is finally delivered;

but "Loading or Unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "Auto".

19.   "Medical Incident" means any act, error or omission arising out of the providing of or failure to provide "Professional Health Care Services" by the "Insured" or any person for whom the "Insured" is legally responsible.

20.   "Occurrence" means an event, or continuous, intermittent or repeated exposure to conditions which causes "injury" under Insuring Agreement (A) or "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" under Insuring Agreement (B).

21.   "Personal Injury" means "Injury", other than "Bodily Injury", arising out of one or more of the following offenses:

a.    false arrest, detention or imprisonment;

b.    malicious prosecution;

c.    wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.    oral or written publication of material that violates a person's right of privacy.

22.   "Policy Period" means the period of time specified in the Declarations as the effective dates of this Policy.

23    "Products-Completed Operations Hazard" means all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

a.    Products that are still in your physical possession; or

b     Work that has not yet been completed or abandoned. However, "Your Work" will be deemed completed at the earliest of the following times:

(1) when all of the work called for in your contract has been completed.

(2) when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete will be treated as completed.

"Products-Completed Operations Hazard" does not include "Bodily Injury" or "Property Damage" arising out of:

a. the transportation of property, unless the "Injury" or "Damage" arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "Loading or Unloading" of that vehicle by any "Insured;"

b. the existence of tools, uninstalled equipment or abandoned or unused materials; or

c. Products or operations for which the classification, listed in the Declarations or in a Policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

24. "Professional Health Care Services" means all services rendered or required to be rendered by an "Insured" ir the treatment or care of any person, including the furnishing of medical, nursing and other health care services such as physical and occupational therapy. It also includes, but is not limited to, the furnishing or dispensing c drugs, blood, blood products, or medical, surgical, dental or psychiatric supplies, equipment, or appliances i connection with such care; the furnishing of food or beverages in connection with such care; the providing ( counseling or other social services in connection with such care; and the handling of, or the performance of pos mortem examinations on, human bodies.

25. "Property Damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of u. shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to oc at the time of the "Occurrence" that caused it.

26. "Retroactive Date" means the date specified in Item 6 of the Declarations.

27. "Temporary Worker" means a person who is furnished to you to substitute for a permanent "employee" on le. or to meet seasonal short-term workload conditions.

28. "Underwriters" means those "Underwriters" subscribing to this Policy.

29. "Wrongful Act" means any negligent act, error or omission of the "Insured" or any other person for whose a errors or omission the "Insured" is legally liable.

30.    "Your Product" means:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts, or equipment furbished in connection with such goods or products.

"Your Product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use or "Your Product"; and

    b.    The providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines, or other property rented to or located for the use of others but not sold.

31.    "Your Work:" means:

    a.    Work or operations performed by you or on your behalf; or

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

    b.    The providing of or failure to provide warnings or instructions.

## Nursing Home Application—General Liability & Professional Liability
### (Complete separate application for each location)

### General Information

| Name of Applicant | *Richard Martin* |
|---|---|
| Name of Business | *Valley Grande Manor* |
| Street Address | *801 Wildrose Lane* |
| | *Brownsville, TX 78520* |
| Address of Location | *Same as above* |

| Type of Enterprise: ☐ Individual   ☒ Corp.   ☐ Partnership   ☐ Joint Venture |
|---|
| ☐ For Profit   ☐ Non-Profit   ☐ Other |

| Date Established: |
|---|

| Estimated receipts/operating budget next 12 months: | *8 000.00* |
|---|---|
| Estimated payroll next 12 months: | *2,700.000* |

| Provide a full description of services rendered: |
|---|
| |

| Type of Facility | Number of licensed beds | Number of occupied beds |
|---|---|---|
| Nursing Home | *180* | *129* |
| ALF/Adult Foster Home/Home for the Aged | | |
| Group Home for the Retarded | | |
| Alcohol or Drug Treatment | | |
| Alcohol or Drug Detoxification | | |
| Shelter or Halfway House (adults only) | | |
| Home or Shelter for Children | | |
| Other (specify) — | | |

| Other Operations | If "not applicable" indicate "N/A" |
|---|---|
| Counseling | Number of Visits |
| Day Care | Number of Attendees |
| Home Health Care | Receipts from operation |
| Other (specify) | |

| Describe therapy, other than drugs, used in course of treatment (i.e. Group therapy, individual counseling) |
|---|
| |



CRAVENS/WARREN
& COMPANY
P.O. Box #1370, Houston, Texas 77251-1370
Phone (713) 690-6000   Fax (713) 690-6020

1.

## Management

| | |
|---|---|
| Length of time under present management: | 2 YEARS — 2 MTS. |
| Length of time under present ownership: | SAME |

Is this facility run by an outside management company?   yes   (no)
If yes, name and corporate address_____
Names and addresses of all similar facilities managed by the management company:

_____
_____
_____

Is the applicant engaged in, owned by, associated with or involved in any other
enterprise?  ☐ yes   ☐ no
If yes, provide names and addresses of all similar facilities owned:

— GRAHAM OAKS CARE CENTER, GRAHAM, TX
—

Are you currently licensed for operation by the proper regulatory authorities?
 ☐ yes   ☐ no   If no, please explain
Is the license conditional?   ☐ yes   ☐ no
If yes, explain.
Has the license ever been revoked?  ☐ yes   ☐ no
If yes, explain.

Do you have any professionals under contract?   (yes)  no
If yes, fully describe: Medical Director Contract
Are certificates of insurance for professional liability required? N/A
What limits required:

## Patient Profile

| Patient Census | # Ambulatory | # Not-Ambulatory |
|---|---|---|
| Seriously mentally impaired (Alzheimers) | 2 | 32 |
| Somewhat mentally impaired (Senile) | 5 | 11 |
| Aged but mentally & physically fully functional | 5 | 10 |
| Drug or alcohol rehab | N/A | N/A |
| Skilled Nursing Care | 77 | 22 |
| Intermediate Nursing Care | N/A | N/A |
| Other (specify) | | |

| Bedridden | | N/A | ≥ 0 |

Patient ages (indicate percentage by age):
| under 18 0 % | 18-35 1 % | 36-50 16 % | 51-65 22% | 65 + 61 % |

Is facility: (Co-ed)    Single sex

### Decubitus Ulcers

| Stage | Acquired Ulcers | Inherited Ulcers | Reporting Period (month/year) |
|-------|-----------------|------------------|-------------------------------|
| I | 0 | 0 | June 2000 |
| II | 0 | 8 | " " |
| III | 0 | 4 | " " |
| IV | 0 | 8 | " " |

### Monitoring & Controls:

What floors are the non-ambulatory patients on? _First Floor (One Level Only)_

Sq' ment of each floor? _N/A_

Are restraints used?  ☑ yes  ☐ no

If yes, describe procedures and percentage of patients normally restrained:
_Restraint Reduction Evaluation and ongoing Restraint Project_

What precautions are taken to keep track of patients? _Midnight Census Count._

Sign out procedures? ☑ yes  ☐ no

Alarms on doors to prevent clients from wandering from the home? ☑ yes  ☐ no

Electronic monitoring of patients with Senility or Alzeimers? ☑ yes  ☐ no

Does applicant control the possession of smoking materials?  ☑ yes  ☐ no
Describe procedures: _Patients only Allowed To Smoke At Scheduled Times Held in designated locations._

List any medication administered and in what form given(i.e. Methodone, pill)
_Haldix 20mg. pill._

Are medications kept under locked conditions?  ☑ yes  ☐ no
Do only authorized personnel have keys?  ☑ yes  ☐ no

| | | | |
|---|---|---|---|
| Do any patients work full or part-time?  ☐yes  ☑no | | | |
| If yes, what type of work? | | | |
| Is any counseling provided?  ☑yes  ☐no | | | |
| If yes, describe. | | | |
| Are any medications administered?  ☑yes  ☐no | | | |
| If yes, describe. *Medications pass according to physician's order AND Regulation 3* | | | |

## Staffing

| Staff | 1st Shift | 2nd Shift | 3rd Shift |
|---|---|---|---|
| MD | | | |
| RN | 1 | 1 | |
| LPN | 8 | 8 | 4 |
| Nurse Aids | 12 | 11 | 9 |
| Psychologists | | | |
| Counselors | 1 | | |
| Therapists | 2 | 4 | |
| Administrator | | 1 | |
| Other(specify) | 22 | 7 | |

Housekeeping - Administration, Kitchen, Laundry

| | |
|---|---|
| Are any of the above required to maintain own professional coverage? ☐yes ☑no | |
| If yes, how is coverage verified? | |
| At what minimum limits? | |

| |
|---|
| Is 24 hour supervision of employees provided?         ☑yes                    ☐no |
| Are prior employment histories of employees checked?   ☑yes        ☐no |
| Are criminal background checks performed on all employees? ☑yes     ☐no |
| Describe training of new employees for each class of employees: |

RN: *4 Day Orientation with Co-Worker*

LPN: *4-Day Orientation with Co-Worker*

Nurse Aids: *4-Day Orientation with Co-Worker*

Describe training of existing employees for each class of employees:

RN: _monthly inservice in continue training._

LRN: _monthly inservice in continuing training_

Nurse Aide: _monthly inservice in cont training_

_____

Describe procedure for maintaining copies of current licenses for all licensed employees/contractors: _Business office and DON maintains licensate file, to update license contract._

---

## Physical Features of Building  (If multiple buildings, answer for each)

| Is the insured a: ☐Building Owner    ☐Tenant    ☐General Lessee | |
|---|---|
| Construction of building | Brick / metal studs |
| Square feet | 44,090 |
| Year built | 1972 |
| Number of floors | one |
| Age and type of wiring | 28 yds. Solid core |
| When was wiring last updated | N 0 |
| Number of fire extinguishers | 18 |
| Number of fire escapes | 10 |
| Is the building sprinklered? | ☑Yes  ☐No |
| Do all bedrooms/hallways have smoke detectors? | ☑Yes  ☐No |
| Electronic or battery operated? | Electronic |
| Local fire alarm | ☑Yes  ☐No |
| Central station fire alarm | ☑Yes  ☐No |
| Distance to nearest fire station | one mile |
| Are handrails provided in hallways and bathrooms? | ☑Yes  ☐No |
| Temperature of hot water | 110° |

| | |
|---|---|
| Swimming pool or hot tub | ☐yes ☐no |
| If yes, fenced with self locking gate? | ☐yes ☐no |
| Diving board? | ☐yes ☐no |
| Slide? | ☐yes ☐no |
| Is there a written emergency evacuation plan in place? | ☐yes ☐no |

**Current Insurance:**

| | |
|---|---|
| Does applicant have Worker's Compensation coverage in force? yes / no | |

| | | |
|---|---|---|
| Has applicant had previous general liability AND professional liability insurance for this enterprise? | ☐yes | ☐no |
| Insurance Company  *Evanston Insurance Co* | | |
| Prior limits of liability  $ 1,000,000 /$ 3,000,000 | | |
| Claims made and/or occurrence form | ☐C/M | ☐Occ |
| If claims made, retroactive date current policy  *SM 803 757* | . ( | . ) |
| Expiring Premium | | |
| Expiring Deductible/SIR | | |
| Policy Period  *6-10-99 - 6-10-00* | | |
| Physical/sexual abuse & molestation covered during prior term? | | |
| If yes, what limits. | | |
| Punitive damages covered during prior term? | ☐yes | ☐no |
| If yes, what limits? | | |

| |
|---|
| Limits requested:  $ 1,000,000.00 / $ 3,000,000.00 |
| Deductible(including LAE) requested  $ 10,000.00 per claim |
| Standard limits for Physical/sexual abuse are $25,000/$54,000. Higher limits may be available for select risks. What limits requested? $ 100,000 |
| Any prior complaints or incidents reported arising out of alleged or actual physical or sexual abuse and molestation? ☐yes  ☐no |
| If yes, fully describe followup action taken: |
| _____ |

**Claims History:**

| During the past five (5) years, have any claims been presented to your current or prior insurance carrier or to you?    ☐ yes    ☐ no | |
|---|---|
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |
| | |
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |
| | |
| Date of loss | |
| Current reserve or amount paid | |
| Description of loss | |

| Has applicant, or any other person for whom insurance is being requested, aware of any circumstances, which may result in a claim?    ☐ yes    ☐ no |
|---|
| If yes, provide full details. |
| Is expiring carrier offering renewal?    ☐ yes    ☐ no |
| If "no" attach copy of non-renewal notice. |
| If expiring carrier offering renewal, explain reason for submitting account: |

6.

Completion of this form does not bind coverage. Applicant's acceptance of quotation is required prior to binding coverage and policy issuance. It is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to the policy.

If an order is received, the application is attached to the policy as it is necessary that all questions be answered in detail.

*Notice applicable in most states:
Any person who knowingly and with intent to defraud any Insurance Company or other person, files an application for insurance, or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any material fact, commits a

fraudulent insurance act, which is a crime and may also be subject to civil penalty.

| Applicant's Signature | *(signature)* |
|---|---|
| Title | *Administrator* |
| Date | *June Prows* |

## For ALL Nursing Homes, we need the following:

**Hard copy, currently waived loss runs for last 5 years**
Copy of license
Copy of current balance sheet and Statement of P&L.